Richard SCOTT and Sharon Scott,
Appellants–Plaintiffs,

v.

MARSHALL COUNTY BOARD OF ZON-
ING APPEALS, Dan Johnson, Elaine
Johnson, Betty Harbaugh, W.A. Ban-
now, Clark Reiter, Laura Mathews,
Louis Albert, Bruce Albert and Mary
Albert, Appellees–Defendants.

No. 50A03–9706–CV–193.

Court of Appeals of Indiana.

July 20, 1998.

Richard K. Helm, Rockhill, Pinnick, Pequignot, Helm, Landis & Rigdon, Warsaw, for Appellants–Plaintiffs.

J. Eric Davis, Stevens, Travis, Fortin & Lukenbill, Plymouth, for Appellee–Defendant Marshall County Board of Zoning Appeals.

## OPINION

HOFFMAN, Judge.

Appellants-plaintiffs Richard Scott and Sharon Scott appeal from a decision in favor of appellee-defendant Marshall County Board of Zoning Appeals (the "Board"). The facts most favorable to the judgment are presented below.

The Scotts' 40–acre farm is located in Marshall County. The property is zoned agricultural or A–1. On March 23, 1994, the Scotts applied for a special exception for the construction of a building on the property to be used as a dog kennel to breed and raise pedigree Rottweilers. The first application came before the Marshall County Plan Commission (Plan Commission) prior to any construction, at which time a public hearing was held and the Plan Commission recommended against approval. At the time of the first request, the Zoning Administrator and Plan Commission recommended to the Scotts that they amend their request for a special exception by requesting permission to place the kennel in a different location on their farm which would place it further away from their neighbors. The Scotts withdrew their application prior to a Board hearing on the issue.

On July 5, 1994, the Scotts requested and received an improvement location permit to construct a pole building in the same location as their prior request for a kennel. The permit specifically stated that the pole building "cannot be used for a kennel without the approval of the Board." The permit further described the definition of a "kennel" as found in the Marshall County Zoning Ordinance. On June 19, 1995, a zoning violation notice was issued to the Scotts, citing a kennel as the violation.

On July 10, 1995, the Scotts filed another request for a special exception. The Scotts requested permission to use the pole building as a "10 dog kennel." The second request for a special exception went to the Plan Commission and was again denied. The Board, on December 12, 1995, heard the request, at which time a public hearing was held. At the public hearing, several of the Scotts' neighbors stated and submitted in writing that noise was already a problem prior to the hearing on the special exception. The neighbors also cited safety issues as a concern. The Board voted 4–0 with one abstention to deny the Scotts' request for special exception. Thereafter, the Scotts filed a petition of writ of certiorari and a complaint for declaratory judgment with the Marshall Circuit Court. On January 8, 1997, the court filed an order denying the petition and the complaint and affirming the decision of the Board. The Scotts now appeal.

Two issues are dispositive of this Court's review:

(1) whether the commercial raising of dogs, i.e., a "kennel," is a permitted use in an agriculturally zoned area, under the Marshall County Board of Zoning Appeals; and

(2) whether the Board properly denied the Scotts' request for a special exception to operate a kennel on their property.

 In reviewing a decision of a Board of Zoning Appeals, this Court and the trial court are bound by the same standard. We presume the determination of the Board, an administrative agency with expertise in zoning matters, is correct. Only if the Board's decision is arbitrary, capricious or an abuse of discretion should it be reversed. *Maxey v. Board of Zoning Appeals*, 480 N.E.2d 589, 592 (Ind.Ct.App.1985), *trans. denied.* We cannot reweigh the evidence or substitute our decision for that of the Board. *McBride v. Board of Zoning Appeals*, 579 N.E.2d 1312, 1315 (Ind.Ct.App.1991). Thus, the Scotts labor under a heavy burden in urging this Court to overturn the Board's decision.

 The Scotts initially contend that the commercial raising of dogs, i.e., a "kennel," is a permitted use in an A–1, agricultural district and does not fall in the category of special exceptions listed in the zoning ordinance. Construction of a zoning ordinance is

a question of law. *Columbus Bd. of Zoning App. v. Big Blue,* 605 N.E.2d 188, 191 (Ind. Ct.App.1992). This Court interprets the language of an ordinance as a whole, and the words are given their common and ordinary meaning. *Id.*

■ The Agricultural District Special Exceptions portion of the Marshall County Zoning Ordinance, Section 305, Paragraph 17, lists "veterinary facilities and kennels" as uses requiring an application for special exception. A "kennel" is defined in the ordinance as follows:

> Kennel: Any premises or portion thereof on which more than four dogs, cats, or other household domestic animals over four months of age are kept or on which more than two such animals are maintained, boarded, bred, or cared for, in return for remuneration, or are kept for the purpose of sale.

Marshall County Zoning Ordinance, Section 202.35. The clear meaning of the ordinance is that a kennel located on property which is zoned A–1 requires a special exception. Thus, the Scotts' pole building located on their property must receive a special exception if it is to be used as a "10 dog kennel."

The Scotts argue that the word "and" in Special Exception, Paragraph 17 "veterinary facilities *and* kennels" (emphasis added) requires this Court to interpret Paragraph 17 to mean that "veterinary" modifies the word "kennels" (i.e., veterinary kennels), because "and" is conjunctive rather than disjunctive. The Board counters that the Scotts' argument ignores the rest of the ordinance, including the specific definition of "kennel," and further significantly restricts the common usage of the word "and."

" '[T]he words "and" and "or" as used in statutes are not interchangeable, being strictly of a conjunctive and disjunctive nature respectively, and their ordinary meaning should be followed if it does not render the sense of the statute dubious.' " *Sekerez v. Youngstown Sheet & Tube Co.,* 166 Ind.App. 563, 567, 337 N.E.2d 521, 524 (1975) (quoting 82 C.J.S. *Statutes* § 335, at 673). Merriam Webster's Collegiate Dictionary 10th Ed. (1995) defines "and" as: "**1.**—used as a function word to indicate connection or addition esp[ecially] of items with the same class or type; used to join sentence elements of the same grammatical rank or function." ·

The definition of the word "and" does not require the interpretation the Scotts suggest. Any suggested ambiguity is eliminated by the definition of "kennel" found in Section 202.35 of the Zoning Ordinance. Substituting the word "kennel" for its definition, the ordinance reads:

> Veterinary facilities and [*any premises or portions thereof* on which more than four dogs, cats, or other household domestic animals over four months of age are kept or on which more than two such animals are maintained, boarded, bred, or cared for, in return for remuneration, or are kept for the purpose of sale.]

(Emphasis added) Section 305, Table A, SPECIAL EXCEPTIONS, Paragraph 17. The conjunctive "and" is clearly not intended to cause "veterinary" to modify "kennel" when the phrase is read in its entirety. Rather, the definition indicates that a "kennel" is something in addition to, and to be considered separately from, a "veterinary facility." Additionally, if the definition of "kennel" in Section 202.35 does not apply to Section 305, Table A, SPECIAL EXCEPTION, Paragraph 17, then the definition in Section 202.35 would be rendered useless, because the word "kennel" is not used elsewhere in the ordinance. Further, by requiring a special exception for maintaining, boarding, breeding or caring for more than four dogs, Marshall County made it clear, when the ordinance was originally adopted, that this type of kennel operation was intended to be treated separately from traditional agricultural uses. *See e.g., Development Assoc. v. Wake County Bd. of Adjustment,* 48 N.C.App. 541, 547–48, 269 S.E.2d 700, 704 (1980) *review denied,* 301 N.C. 719, 274 S.E.2d 227 (1981) (dogs are not included within classification of livestock, and that breeding and operation of a dog kennel are not farming activities). "Kennels" are defined separately from "veterinary facilities" and as such the Scotts were properly required to obtain a special exception to oper-

ate a dog kennel on their property which is zoned A–1.

■ The Scotts further contend that the Board erred in denying their request for a special exception to operate a kennel on their property. In examining a decision of a board of zoning appeals to determine whether it was incorrect as a matter of law, a trial court does not conduct a trial *de novo* and does not substitute its decision for that of the board; our review of a trial court's ruling on review of such a decision is governed by the same considerations. *Columbus Bd. of Zoning App. v. Wetherald,* 605 N.E.2d 208, 211 (Ind. Ct.App.1992), *trans. denied.* Unless the Board's decision was illegal, it must be upheld. *Id.* This Court cannot reweigh the evidence or substitute its decision for that of the Board. *Id.* Further, there is a presumption that an agency's decision is correct in view of its expertise in zoning problems of its particular jurisdiction. *Id.; Bd. of Zon. App. v. Amer. Fletch. Nat. Bk.,* 139 Ind.App. 9, 12, 205 N.E.2d 322, 324 (1965).

The Scotts requested a special exception for a kennel on their property which is in an area zoned A–1. Section 603.2(c) in the Marshall County Zoning Ordinance provides:

Before a special exception is granted, the Board shall find:

1) that the special exception will not endanger the public health, safety, morals, comfort, or general welfare;

2) that the special exception will not be injurious to the use and enjoyment of other property in the vicinity nor diminish and impair property values within the neighborhood;

3) that the special exception will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district;

4) that adequate utilities, access roads, drainage and other necessary facilities have been or are being provided;

5) that ingress and egress points are so designed as to minimize traffic congestion in the public streets.

■ On December 12, 1995, after a public hearing on the Scotts' request for a special exception for a 10 dog kennel, the Board denied the request finding:

That the special exception [would] ... be injurious to the use and enjoyment of other property in the vicinity [and] ... diminish and impair property values within the neighborhood.

The record of the proceedings, which includes the transcript of the public hearing, shows that the Board had more than sufficient evidence to make the finding that the proposed location of the kennel would be "injurious to the use and enjoyment of other property in the vicinity" and "diminish and impair the property values within the neighborhood." There are four to five homes within a 600–foot radius of the proposed kennel site. Although the land around the site is zoned A–1, it is primarily a residential area. The Scotts were housing seven dogs at the time of the hearing, despite the zoning ordinance restrictions, and neighbors at the hearing complained that the dogs barked at various hours during the day and night and noise was already a problem. The Scotts' request was for a "10 dog kennel." Therefore, any noise interference at the time of the hearing with only seven dogs would more than likely become worse with ten. Further, the size of the proposed kennel, 2,244 square feet, would provide sufficient room to house more than ten dogs in the future. Based upon the evidence presented at the hearing and contained in the record, the Board reasonably denied the Scotts' request for a special exception finding that the proposed kennel would be injurious to the use and enjoyment of others' property. The Scotts merely request that this Court reweigh the evidence, which it will not do.

■ The Scotts also suggest that the hearing was biased because the Zoning Administrator participated in the hearing and provided the Board with a staff report on the Scotts' request. IND. CODE § 36–7–4–916 requires the Board to adopt rules concerning a number of issues, including the conduct of hearings. The Board has adopted a rule entitled "staff report" which specifically requires the Zoning Administrator to submit a written staff report on each appeal at least five days prior to a meeting. The trial court was requested to take judicial notice of this

rule, which is a matter of public record and which was duly adopted by the Board on March 12, 1985. Moreover, IND. CODE § 36–7–4–920 states:

(e) The staff (as defined in the zoning ordinance), if any, *may appear before the board at the hearing and present evidence in support of or in opposition to the granting of a variance or the determination of any other matter.*

\* \* \*

(g) A person may not communicate with any member of the board before the hearing with intent to influence the member's action on a matter pending before the board. Not less than five (5) days before the hearing, however, the staff (as defined in the zoning ordinance), if any, *may file with the board a written statement setting forth any facts or opinions relating to the matter.*

IND. CODE § 36–7–4–920(e) and (g) (emphases added). Clearly the Zoning Administrator was entitled and even encouraged to provide the Board with his investigation of the facts, his opinion, and present evidence and argument. The trial court's determination that the Board's decision was based on the evidence was not in error. Hence, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and RILEY, JJ., concur.