MIDWEST MINERALS INC.,
Appellant–Petitioner,

v.

BOARD OF ZONING APPEALS OF the AREA PLAN DEPARTMENT/COMMISSION OF VIGO COUNTY, Appellee–Respondent.

No. 84A01–0708–CV–360.

Court of Appeals of Indiana.

Feb. 26, 2008.

Leslie C. Shively, Shively & Associates, P.C., Evansville, IN, Attorney for Appellant.

Joseph K. Etling, Michael A. Slagle, Smock & Etling, Terre Haute, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Petitioner Midwest Minerals ("Midwest") appeals the trial court's order denying its amended verified petition for writ of certiorari, judicial review and declaratory judgment. Midwest challenges whether the trial court erred in affirming the denial of its petition for a special exception by Appellee–Respondent Vigo County Board of Zoning Appeals ("BZA"). We affirm.

## FACTS AND PROCEDURAL HISTORY

In a previous appeal of the instant case, this court recited the following facts:

Midwest owns [approximately 11.5 acres] of real estate in West Terre Haute, Indiana. This property is zoned M–2 heavy industrial and was formerly used for coal mining operations. Pursuant to Vigo County's Unified Zoning Ordinance, ("Zoning Ordinance"), the purpose of the M–2 heavy industrial district is to provide for establishments that primarily engage in manufacturing, construction, wholesaling, warehousing and associated retail, financial and services activities with a need for outdoor storage, processing, or operation. Vigo County Zoning Ordinance, Ind., § 6–105–10.02(A) (1996). The Zoning Ordinance provides an exhaustive list of permitted uses in the M–2 heavy industrial district, which includes but is not limited to: (1) forest products processing; (2) bottled gas storage and distribution; (3) manufacturing of cement, lime or gypsum; (4) manufacturing of construction equipment and machinery; (5) power plants; and (6) rolling and extruding of metal. See Zoning Ordinance § 6–105–10.02(B)(1).

The Zoning Ordinance also provides a list of activities that require obtaining a special exception from the BZA. A special exception is a use permitted under a zoning ordinance upon the showing of certain statutory criteria. Under Vigo County's Zoning Ordinance, such uses include, but are not limited to, battery salvage and recycling, iron and steel production, concrete mixing, and manufacturing gas or chemicals. See Zoning Ordinance § 6–105–10.02(B)(4).

In 2002, Midwest approached the Vigo County Area Planning Department

("Planning Department") about establishing a molecular methane gas processing unit on its property in West Terre Haute. The processing unit would allow Midwest to extract coal mine methane gas and then process it by filtering out impurities to bring the methane gas to commercial grade. The executive director of the Planning Department determined that this activity constituted "manufacturing" gas, and therefore under provisions of the Zoning Ordinance, Midwest was first required to petition for and obtain a special exception from the BZA. *See* Zoning Ordinance § 6–105–10.02(B)(4).

Midwest did not appeal the Planning Department's decision at that time. Instead, Midwest applied to the BZA for a special exception, which was denied. In December of 2002, Midwest filed an amended verified petition for writ of certiorari, judicial review and declaratory judgment with the Vigo Superior Court, alleging that the BZA erroneously denied Midwest's application for a special exception and further alleging that Midwest was not required to obtain a special exception. The trial court affirmed the BZA's decision, and Midwest appealed.

On April 26, 2004, our court issued a unanimous memorandum decision, concluding, in part, that Midwest had failed to appeal the Planning Department's decision that it was required to obtain a special exception to establish its processing unit. *Midwest Minerals v. BZA*, No. 84A01–0403–CV–145 [808 N.E.2d 772] (April 26, 2004). Therefore, we determined that Midwest had not exhausted its administrative remedies, which deprived the trial court of subject matter jurisdiction over this claim. Regarding the claim that the BZA erroneously denied Midwest's application for a special exception, we reversed and remanded to the trial court with instructions to order the BZA to enter sufficient findings.

*Midwest Minerals, Inc. v. Board of Zoning Appeals*, No. 84A05–0606–CV–316, 862 N.E.2d 726 (March 8, 2007) (affirming the trial court's order endorsing the BZA's determination that Midwest's proposed gas processing unit would engage in "manufacturing" gas, and, as such, Midwest was thereby required to apply for a special exception) (footnote omitted), *trans. denied.*

On June 2, 2004, Midwest moved for a change of venue. The BZA objected to on June 4, 2004. On July 14, 2004, the BZA adopted new findings, which read:

A. The burden of proof as to whether or not a Molecular Gate Natural Gas Processing Unit would be injurious to the public health, safety, morals, convenience and general welfare of the community is on the petitioning party. The petitioner has failed to provide any credible proof that the proposed use would not be injurious to the public health, safety, morals, convenience and general welfare of the community. There was testimony from the petitioner acknowledging that "the handling or processing of any form of natural gas by a largely automated unit will result in questions regarding security, noise, and odors." The petitioner failed to adequately address the safety issues raised by their own statements. There was testimony from the remonstrators suggesting that the Molecular Gate Unit would be detrimental to the health and safety of the community. One remonstrator expressed his concern about the safety of the processing unit due to the fact that it would remain unsupervised for twenty-four hours per day. Another remonstrator expressed concern for neighborhood safety and quality of life based upon research explaining the hazards

associated with methane gas. Another remonstrator pointed out the fact that the plan was to transport methane gas through a low-pressure, non-steel pipeline, and that if the pipeline became damaged, it would be virtually undetectable due to the non-odorous gas, and that people would be killed by the methane or a major fire would break out. There was also concern expressed for the children living and playing in the area. Another remonstrator expressed his fear that his well water could become contaminated and, there was testimony that the wells are very shallow in that area. In addition, the petitioner stated that all gas entering and exiting the unit would be via a pipeline. However, no easements exist or have been established for any pipeline. The Staff recommendation was unfavorable. Consequently, the Board of Zoning Appeals finds that the Molecular Gate Natural Gas Processing Unit will be injurious to the public health, safety, comfort, morals, convenience and general welfare of the community.

B. The burden of proof as to whether a molecular gate unit facility would injure or adversely affect the use or value of other property in the immediate area, in a substantially adverse manner, is on the petitioning party. The Petitioner has failed to present any credible proof that the proposed use would not adversely affect other property or property values in the area in a substantially adverse manner. Since the Petitioner has failed to meet its burden of proof, the presumption is that the molecular gate unit facility would injure or adversely affect the use or value of other property in the immediate area in a substantially adverse manner. Accordingly, the Board of Zoning Appeals finds that establishment of the Molecular Gate Natural Gas Processing Unit would in-

jure or adversely affect the use or value of other property in the immediate area in a substantially adverse manner.

C. The burden of proof as to whether a molecular gate unit facility would be consistent with the general character of the zoning district, land uses authorized therein and the Vigo County Comprehensive Plan is on the petitioning party. The petitioner has failed to present any credible proof that the proposed use would be consistent with the general character of the zoning district, land uses authorized therein and the Vigo County Comprehensive Plan. The property surrounding the request is zoned for agriculture and suburban residential. Therefore, the general character of the area is agriculture and rural suburban residential. Therefore, the Board of Zoning Appeals finds that establishment of the Molecular Gate Natural Gas Processing Unit would not be consistent with the general character of the zoning district, land uses authorized therein and the Vigo County Comprehensive Plan.

Appellee's App. p. 44–45. The BZA's new findings were tendered to the trial court on August 10, 2004. On August 13, 2004, Midwest filed an objection to the BZA's new findings. On August 20, 2004, the trial court denied Midwest's motion for a change of venue and determined that the BZA's new findings were sufficient to support its denial of Midwest's application for a special exception.

On September 20, 2004, Midwest appealed the trial court's denial of its motion for a change of venue and the determination that the BZA's findings were sufficient to support the denial of Midwest's application for a special exception. On April 11, 2005, this court issued an opinion reversing the trial court's order denying Midwest's motion for a change of venue, leaving the new

special judge to decide whether the BZA's findings, entered on July 14, 2004, were sufficient. *See Midwest Minerals, Inc. v. Bd. of Zoning Appeals,* 825 N.E.2d 394, 397 (Ind.Ct.App.2005), *trans. denied.*

On June 29, 2007, the trial court entered an order stating that the BZA's July 14, 2004 findings were sufficient to support its denial of Midwest's application for a special exception. This appeal follows.

## DISCUSSION AND DECISION

When reviewing a decision of a zoning board, this court and the trial court are bound by the same standard. *Scott v. Marshall County Bd. of Zoning Appeals,* 696 N.E.2d 884, 885 (Ind.Ct.App.1998). We presume the determination of the board, an administrative agency with expertise in zoning matters, is correct. *Id.* Therefore, we will reverse only if the board's decision is arbitrary, capricious, or an abuse of discretion. *Id.* We will not reweigh the evidence or substitute our decision for that of the board. *Id.* Thus, Midwest labors under a heavy burden in urging this court to overturn the BZA's decision. *Id.*

Midwest argues that the trial court erred in failing to reverse the BZA's decision to deny its application for a special exception. Midwest first contends that because it presented sufficient evidence to show that it would comply with the three criteria for a special exception, the BZA was required to grant the exception. Midwest also contends that the remonstrators presented insufficient evidence to support the BZA's conclusion that its proposed molecular gas processing unit would not meet the special exception criteria.

▆▆▆ Midwest claims that the award of a special exception is mandatory upon the applicant's presentation of evidence that its proposed use satisfies the statutory prerequisites set forth in the zoning ordinance.

It is often true, as [Midwest] notes, that if a petitioner for a special exception presents sufficient evidence of compliance with relevant statutory requirements, the exception must be granted. However, ... while some special exception ordinances are regulatory in nature and require an applicant to show compliance with certain regulatory requirements (e.g. structural specifications), providing the zoning board with no discretion, some special exception ordinances provide a zoning board with a discernable amount of discretion (e.g. those which require an applicant to show that its proposed use will not injure the public health, welfare, or morals). [Midwest's] position that a board of zoning appeals must grant a special exception upon the applicant's submission of substantial evidence of compliance with the relevant criteria is true only as to ordinances falling within the former category. In other words, when the zoning ordinance provides the board of zoning appeals with a discernable amount of discretion, the board is entitled, and may even be required by the ordinance, to exercise its discretion. When this is the case, the board is entitled to determine whether an applicant has demonstrated that its proposed use will comply with the relevant statutory requirements.

*Crooked Creek Conservation & Gun Club v. Hamilton County N. Bd. of Zoning Appeals,* 677 N.E.2d 544, 547–48 (Ind.Ct. App.1997) (citations omitted), *trans. denied.*

Here, the zoning ordinance implicated confers upon the BZA a significant amount of discretion. The ordinance establishes that in order to receive a special exception, an applicant must prove that:

a. The proposed use will not be injurious to the public health, safety, comfort, morals, convenience or general welfare of the community;

b. The proposed use will not injure or adversely affect the use or value of other property in the immediate area in a substantially adverse manner; and

c. The proposed use will be consistent with the general character of the zoning district, land uses authorized therein and the Vigo County Comprehensive Plan.

Unified Zoning Ordinance of Vigo County, § 18(C)(2). It is clear that these criteria, having no absolute objective standards against which they can be measured, involve discretionary decision making on the part of the BZA. *Crooked Creek*, 677 N.E.2d at 548. Thus, the BZA was entitled to determine whether Midwest satisfied the requirements for the grant of a special exception. *Id.*

■ The burden of demonstrating satisfaction of the relevant statutory criteria rests with the applicant for a special exception. *Id.* This court has accordingly been cautious to avoid imposing upon remonstrators an obligation to come forward with evidence contradicting that submitted by an applicant. *Id.* Thus, Midwest bore the burden to show that its proposed molecular gas processing unit would comply with the above mentioned criteria. *Id.* Neither those opposed to Midwest's application, nor the BZA, were required to negate Midwest's case. *Id.*

Because remonstrators need not affirmatively disprove an applicant's case, a board of zoning appeals may deny an application for a special exception on the grounds that an applicant has failed to carry its burden of proving compliance with the relevant statutory criteria regardless of whether the remonstrators present evidence to negate the existence of the enumerated factors. *Id.* However, because the BZA determined that Midwest was not entitled to a special exception, and appears to have based its determination, at least in part, upon evidence presented by the remonstrators, we will determine whether the BZA's decision was based upon substantial evidence. *See id.*

■ When determining whether an administrative decision is supported by substantial evidence, the receiving court must determine from the entire record whether the agency's decision lacks a reasonably sound evidentiary basis. *Id.* Thus, we have noted that evidence will be considered substantial if it is more than a scintilla and less than a preponderance. *Id.* at 549. In other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We believe that the trial court's conclusion that the BZA's determination to deny Midwest's request for a special exception was supported by substantial evidence, and thus was not error. *See id.*

Here, the Zoning Ordinance establishes that an applicant may be awarded a special exception if it meets three requirements. If the applicant fails to prove one of the requirements, it is within the BZA's discretion to deny the applicant's request for a special exception.[1] On appeal, the applicant bears the burden of proving that each of these requirements has been met.

---

1. The requirements as outline in the Unified Zoning Ordinance for Vigo County are written in the conjunctive rather than the disjunctive. This construction suggests that an applicant must satisfy all three requirements in order to prevail upon a request for a special exception. *See generally, Bourbon Mini–Mart Inc. v. Comm'r, Indiana Dep't of Envtl. Mgmt.,* 806 N.E.2d 14, 20 (Ind.Ct.App.2004).

The BZA found that Midwest had failed to prove that its proposed use of the property in question would not be injurious to the public health, safety, comfort, morals, convenience, or general welfare of the community; that it would not injure or adversely affect the use or value of the other property in the immediate area in a substantially adverse manner; and that it would be consistent with the Vigo County Comprehensive Plan. With respect to its finding that Midwest failed to prove that the proposed use would not be injurious to the public health, safety, or general welfare, the BZA found that Midwest acknowledged that its proposed use would result in questions regarding security, noise, and odors, but failed to adequately address the safety issues. Furthermore, the BZA found that Midwest failed to address many of the remonstrators' concerns regarding safety. Due to Midwest's failure to address these concerns as well as its failure to adequately address the safety issues raised by Midwest itself, the BZA found that "the Molecular Gate Natural Gas Processing Unit will be injurious to the public health, safety, comfort, morals, convenience and general welfare of the community." Appellee's App. p. 44.

Midwest argues that the BZA's findings were arbitrary and an abuse of its discretion because the granting of a special exception was mandatory once it showed compliance with the relevant statutory criteria. *See Network Towers, LLC v. Bd. of Zoning Appeals of LaPorte County,* 770 N.E.2d 837, 843 (Ind.Ct.App.2002). However, we conclude that Midwest's reliance on this court's opinion in *Network Towers* is misplaced. Midwest failed to recognize that while this court's opinion in *Network*

*Towers* did provide that the granting of a special exception is mandatory under certain circumstances, the opinion further provides, "[t]his is not to say that Network was automatically entitled to the permit upon a prima facie demonstration that its tower would comply with the conditions enumerated in the Ordinance." *Id.* Furthermore, the *Network Towers* opinion demonstrated that "some special exception ordinances provide a zoning board with a discernable amount of discretion (e.g. those which require an applicant to show that its proposed use will not injure the public health, welfare, or morals)." *Id.,* citing *Crooked Creek,* 677 N.E.2d at 547. Ultimately, the *Network Towers* court concluded, as we have here, that "the Board had the discretion to deny the Permit, even if Network met all the other conditions, provided the evidence supported a finding that the tower would not serve the public welfare."[2] *Network Towers,* 770 N.E.2d at 843.

Given the special discretion afforded to zoning boards in such determination, we conclude that the BZA was within its discretion to deny Midwest's application for a special permit based upon its finding that Midwest failed to meet its burden of proving that the proposed use would not be injurious to the public health, safety, or general welfare of the community. Furthermore, we conclude that the trial court did not err by affirming the BZA's denial of Midwest's request for a special exception on this ground. Because we affirm the trial court's order on this ground, we conclude that it is unnecessary to consider whether Midwest presented substantial evidence to prove that the proposed use

**2.** Midwest points to the *Network Towers* court's determination that, in that case, the board's evidence was insufficient to support its findings, and claims that the evidence that the BZA relied upon in this case is no more conclusive than the evidence presented in *Network Towers.* We are unconvinced by this claim, however and conclude that the BZA's findings were supported by substantial evidence.

would not adversely affect the use or value of the other property in the immediate area in a substantially adverse manner or that the proposed use would be consistent with the general character of the zoning district and the Vigo County Comprehensive Plan.

The judgment of the trial court is affirmed.

BAKER, C.J., and DARDEN, J., concur.