TOWN OF MUNSTER BOARD OF ZONING APPEALS and Precision Homes, Inc., Appellants–Defendants,

v.

Dr. Paula Benchik ABRINKO, Appellee–Plaintiff.

No. 45A04–0810–CV–617.

Court of Appeals of Indiana.

April 30, 2009.

Kathryn D. Schmidt, Jeremy Butler, Burke Costanza & Cuppy, LLP, Merrillville, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Defendants, the Town of Munster Board of Zoning Appeals (BZA) and Precision Homes, Inc. (Precision) (collectively, Appellants), appeal the trial court's Order on Appellee–Plaintiff's, Dr. Paula Benchik Abrinko (Abrinko), Writ of Certiorari which reversed the BZA's decision to grant a developmental standards variance to construct a single-family residence.

We affirm.

## ISSUE

Appellants raise three issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred in reversing the BZA's grant of a developmental standards variance when the BZA found a practical difficulty pursuant to Indiana Code section 36–7–4–918.5.

## FACTS AND PROCEDURAL HISTORY

On November 1, 2007, Precision applied for a developmental standards variance from the Munster BZA to construct a 4,200 square foot house at 10016 Sequoia Lane (the Property), in the White Oak Estates Subdivision in Munster, Indiana. The Munster Town Code section 26–512(3) requires an R1 zoned residence to have side yards totaling 25% of the entire lot width at the building line with a minimum of 10% on either side. Compared to other lots in White Oak Estates, the Property is unique because it has an acute reverse pie shape, with the street frontage totaling 121.42 feet wide and the rear property line totaling 55.81 feet. Because of this reverse pie shape, Precision sought a zoning variance to reduce the rear side yard zoning requirement from 25% to 20%, while still maintaining the 10% on either side as required by the Munster ordinance. Precision's application explained that the variance would allow it to construct a single family home similar in size and style to the other residences in White Oak Estates.

Precision's request was discussed at the BZA's public hearing on January 22, 2008. At the hearing, the BZA considered: (1) Precision's Application for Developmental Standards Variance; (2) a satellite photo of the Property and the two adjacent lots, with the measurement and location of the proposed residence; (3) dimension calculations for the Property; (4) a plat of survey of the Property with the dimensions of the proposed residence; (5) drawings rendering the proposed residence; and (6) floor plans for the proposed residence. In addition, Ted Rohn (Rohn), Precision's representative, testified that if the variance was not granted, Precision would have to reduce the size of the residence by 300 to 400 square feet. Remonstrators, including Abrinko, presented oral testimony stating that "the house was too big for the lot" and that "the value of the area would be reduced if the variance was granted." (Precision's App. pp. 94–95).

On February 26, 2008, the BZA issued its findings of fact, stating in pertinent part:

A. There is a practical hardship to the applicant due to the configuration of the lot at 10016 Sequoia Lane. The lot is a "reverse pie shaped lot" with a front footage width of 121.42 feet reducing to a rear lot width of 55.81 feet. Maintaining a total side yard consisting of 25% of the lot width at the building line would make it very difficult to construct a house on the property similar in size and construction type and aesthetically compatible with neighboring houses.

B. [Precision] requests relief from the overall requirement of Town Code [s]ection 26–512(3) of side yards totaling 25% of the lot width at the building line but will still maintain the minimum of 10% of lot width at the building line for each side yard.

C. The variance will not have an injurious [e]ffect on neighboring properties since applicant could have constructed a house with a side yard 10% of the lot width at the building line on either side pursuant to the code without a variance in any case, if the side yard on the alternate side was 15% of the lot width at the building line.

D. The proposed variance will have a beneficial [e]ffect on the neighboring

properties by allowing the construction of a building which is similar in size and construction design and compatible with houses on surrounding properties.

Wherefore based upon the above findings the [BZA] voted 4–1 to grant the proposed variance.

(Precision's App. pp. 76–77).

On February 15, 2008, Abrinko filed her verified petition for certiorari, appealing the BZA's grant of the variance. On August 21, 2008, the trial court conducted a hearing on Abrinko's petition. Thereafter, on September 19, 2008, the trial court issued an Order, reversing the BZA's decision. The trial court concluded, in pertinent part:

The [c]ourt now finds that given the record that a single-family home was being built amidst other similar single-family homes in that subdivision and that its size was similar to adjacent properties, the [BZA's] record is sufficient to support the first and second elements of I.C. [§ ] 36–7–4–918.5(a).

The record, however, is insufficient to support the [BZA's] finding under subsection (3). The [BZA] found that there is a practical hardship to the application of the zoning ordinance due to the configuration of the lot at 10016 Sequoia Lane. The lot is a "reverse pie shaped lot" with a frontage width of 121.42 feet reducing to a rear lot width of 55.81 feet. The finding that "the lot is a reverse pie shaped lot ..." is supported by the evidence. The evidence that indicates it is the lot shape, as opposed to the size of the house, which causes the practical hardship is lacking.

The [BZA] then found "maintaining a total side yard consisting of 25% of the lot width at the building line would make it very difficult to construct a house on the property similar in size and construction type and aesthetically compatible with neighboring houses." This finding is not supported by substantial evidence. Precision's representative indicated that the size of the house would only have to be reduced in square footage by 300 to 400 square feet to comply with the ordinance.

The drawings are not, by themselves, adequate to support the finding even if the [BZA] ignores the option of slightly reducing the house size. There may be other possible ways to comply with the ordinance, which the [BZA] according to its minutes, and as reflected in its Findings of Fact, never considered. The [BZA's] finding of a practical hardship does not rest upon a rational basis, since the evidence supporting this finding is so meager.

(Precision's App. pp. 5–6).

Appellants now appeal. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

Appellants now contend that the trial court erred by reversing the BZA's grant of Precision's requested variance. Specifically, they assert that by reversing the BZA's grant, the trial court effectively reweighed the evidence without affording the BZA's decision the proper deference.

### I. *Standard of Review*

This court and the trial court are bound by the same standards when reviewing the decision of a board of zoning appeals. *Network Towers, LLC v. Bd. of Zoning Appeals of LaPorte County, Ind.,* 770 N.E.2d 837, 844–45 (Ind.Ct.App.2002). Our review begins with the presumption that the BZA, due to its expertise in zoning matters, reached a correct decision. *Id.* at 845. Because of their expertise, it is the BZA's duty to make findings of fact. *Id.* We may only review the BZA's findings to determine whether they are sup-

ported by the evidence in the record. *Id.* If our review reveals however that the evidence upon which the BZA acted was devoid of probative value, that the quantum of legitimate evidence was so proportionately meager as to lead to a conviction that the BZA's finding does not rest on a rational basis, or that the result of the hearing must have been substantially influenced by improper considerations, the BZA's order will be set aside. *Id.*

■ Moreover, a zoning board must issue findings tailored to address the specific facts presented to the BZA. *Id.* "These basic findings of fact are not sufficient to support the BZA's ultimate findings if they are merely a general replication of the requirements of the ordinance at issue." *Id.* (citing *Metropolitan Bd. of Zoning Appeals, Div. II, Marion County v. Gunn*, 477 N.E.2d 289, 300 (Ind.Ct.App.1985)). Thus, "[w]e have held that this duty includes a requirement that a BZA enter both specific findings of fact and ultimate findings, or determinations." *Id.* (citing *Town of Merrillville Bd. of Zoning Appeals v. Public Storage, Inc.*, 568 N.E.2d 1092, 1095 (Ind.Ct.App.1991)).

## II. *Analysis*

■ Pursuant to Indiana Code section 36–7–4–918.5, a variance may be approved only upon a determination in writing that:

(1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;

(2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner; and

(3) the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property. However, the zoning ordinance may establish a stricter standard than the practical difficulties standard prescribed by this subdivision.

Here, the trial court found that the BZA's record was sufficient to support the first and second requirements of Indiana Code section 36–7–4–918.5; however, the trial court concluded that the BZA's record lacked sufficient evidence of probative value to indicate practical difficulties, as mandated under the third requirement of the statute. We agree.

■ Courts that have applied the standard of practical difficulties have generally required an area variance [1] petitioner, like Precision, to prove "significant economic injury from the enforcement of the zoning ordinance." *Metropolitan Bd. of Zoning Appeals of Marion County, Div. II v. McDonald's Corp.*, 481 N.E.2d 141, 146 (Ind. Ct.App.1985), *reh'g denied.* Other considerations in determining the existence of practical difficulties are whether the injury is self-created or self-imposed and whether any feasible alternative is available, within the terms of the ordinance, which achieve the same goals of the landowner. *Id.*

The documentary evidence—the plat surveys and related drawings—submitted by Precision to the BZA visualizes that the proposed home had difficulties complying with the zoning requirements because of the reverse pie shape of the lot. In further support of its claim of economic injury, Precision focuses on Rohn's testimony before the BZA stating that the proposed house would have to be reduced by 300 to 400 feet if the zoning requirements had to

---

1. An area variance does not affect the use of the land, is less drastic in effect and does not pose the threat of an incompatible use in the neighborhood. *Metropolitan Bd. of Zoning*

*Appeals of Marion County, Div. II v. McDonald's Corp.*, 481 N.E.2d 141, 146 (Ind.Ct. App.1985), *reh'g denied.*

be followed. Precision relies on the inference that a smaller house means less profit and therefore the BZA evidently determined that the smaller house would cause a significant economic injury.

However, our review reveals a record completely devoid of any evidence establishing an economic impact by following the zoning requirement. There is no evidence indicating the footage of other homes in the White Oak Estate neighborhood; no evidence leading to the conclusion that a smaller house is not similar in aesthetics to the adjacent homes; no evidence of Precision's financial hardship if it were to build a smaller home—if indeed the proposed house is smaller than the surrounding residences. The evidence submitted merely establishes that the proposed home had difficulties complying with the zoning requirements because of the shape of the lot. None of the evidence supports the BZA's general finding that building the home would amount to practical difficulties if the builder has to comply with the ordinance because of the lot's reverse pie shape.

Additionally, Precision attempts to liken its situation to *Snyder v. Kosciusko County Bd. of Zoning*, 774 N.E.2d 550 (Ind.Ct. App.2002). Comparing *Snyder* to the case at bar, we find that in *Snyder*, the BZA considered evidence of property values, heard detailed testimony, and considered previous allowances of similar variances. As such, there was substantially more evidence before the Kosciusko County BZA than in the current case. We concluded in *Snyder* that the BZA's findings covered the three statutory requirements and thus, we found that its decision was neither arbitrary or capricious. *Id.*

In sum, due to the very broad findings which solely focused on the size of the lot, the BZA's basic findings come very close to being merely a general replication of

the requirements of the ordinance at issue. *See Network Towers*, 770 N.E.2d at 845. We agree with the trial court that the quantum of legitimate evidence before the BZA was so proportionately meager that we cannot but conclude that the BZA's finding does not rest on a rational basis. *See id.*

### CONCLUSION

Based on the foregoing, we hold that trial court properly reversed the BZA's grant of a developmental standards variance because there was no rational basis for the BZA's finding of practical difficulties.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.