Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANTS:

**TERRY K. HIESTAND**
Hiestand Law Office
Chesterton, Indiana

ATTORNEY FOR APPELLEES:

**CHARLES F.G. PARKINSON**
Harris Welsh & Lukmann
Chesterton, Indiana

**FILED**

Dec 31 2012, 11:30 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOB STEEL CORP. and LISCO, INC. | ) | |
| | ) | |
| Appellants-Petitioners, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 64A05-1205-PL-245 |
| BOARD OF ZONING APPEALS OF | ) | |
| THE TOWN OF BURNS HARBOR | ) | |
| and THE PLAN COMMISSION OF | ) | |
| THE TOWN OF BURNS HARBOR, | ) | |
| | ) | |
| Appellees-Respondents. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Mary R. Harper, Judge
Cause No. 64D05-0802-PL-1773

**December 31, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Job Steele Corporation and Lisco Incorporated (collectively "Job Steele") appeal the Porter Superior Court's order affirming the Town of Burns Harbor's Plan Commission and Board of Zoning Appeals' (collectively "the BZA") denial of its application for a special exception to operate a truck terminal on its property, which is located in a commercial zoning district. Job Steele argues that the BZA's denial of its application for a special exception was arbitrary, capricious or an abuse of discretion, and that the denial also violated Job Steele's equal protection rights under the Indiana and United States Constitutions.

We affirm the BZA's denial of Job Steele's application for a special exception in all respects.

## Facts and Procedural History

In 2007, Job Steele leased property from Lisco Incorporated located on U.S. Highway 20 in Burns Harbor, Indiana with the intent of operating a truck terminal. The property, which is located in a C-2 commercial zone, had previously housed a truck service and repair center. A special exception was granted for this use in 1980. Job Steele's proposed operation of the truck terminal would include dispatching, loading and unloading of trucks, outside storage and warehousing. The Town's zoning ordinance defines a truck terminal as:

> Any land use with or without buildings for, but not limited to: parking, storage, maintenance, fuel sales, food service or transfer station for commercial trucks, tractors, truck trailers, and other commercial vehicles.

Appellant's App. p. 230. A truck terminal may be operated in a C-2 zone if a special exception is granted.

2

After Job Steele was notified that operating a truck terminal on the property would require a special exception from the BZA, it filed an application requesting a special exception to allow the operation of a truck terminal. Job Steele also filed petitions for use variances for a warehousing facility and an outside storage facility. A public hearing was held on Job Steele's application on December 18, 2007. One remonstrator appeared at the hearing and expressed concerns about increased semi-truck traffic in the area.

The BZA continued the hearing until the Plan Commission could review the completed application and make a recommendation. On January 8, 2008, the Plan Commission completed a final review of Job Steele's application. After noting that the proposed uses would increase the amount of traffic in the vicinity of the property, specifically U.S. Highway 20, the Commission voted 6-1 to forward the special exception to the BZA with an unfavorable recommendation.

The BZA resumed its public hearing on Job Steele's application and variance petitions on January 22, 2008. A second remonstrator, a neighboring business owner, spoke at the hearing and expressed concern about the appearance of an outside storage yard adjacent to his recreational vehicle business. Ultimately, the BZA voted to deny the special exception for Job Steele's truck terminal by a 4-1 vote after finding that Job Steele failed to meet five of the eight standards required by the applicable zoning ordinance. The BZA determined that Job Steele's proposed use of the property was not consistent with the stated objectives of the Town's Comprehensive Plan, which includes developing a strong commercial core. Moreover, the BZA was concerned with increased

3

truck traffic in an area that already suffers from traffic congestion. The BZA also voted unanimously to deny the variances for outside storage and for warehousing.

On February 21, 2008, Job Steele filed a Verified Petition for Writ of Certiorari in the Porter Superior Court, which included a count requesting damages for inverse condemnation. The parties filed cross-motions for summary judgment and a hearing was held on those motions on March 14, 2012. In April 13, 2012, the trial court issued an order granting the BZA's motion for summary judgment.

In its order, the trial court concluded that the BZA was justified in denying Job Steele's application for a special exception to operate a truck terminal in a C-2 zone because of 1) the BZA's valid concern over increased traffic congestion in an already congested area; 2) that having a storage facility would alter the character of the neighboring properties; and 3) that use of the property as a truck terminal "would not be 'consistent with the intent and purpose of the zoning ordinance and the objectives of the Comprehensive Plan[.]'" Appellant's App. p. 13. The trial court also concluded that the BZA justifiably denied Job Steele's requested variances for outside storage and warehousing.

Finally, the trial court concluded that the BZA's refusal to grant Job Steele's application for a special exception and variances did not result in a taking of the property at issue. Specifically, the court observed that restricting the presence of industrial businesses in a commercial zone is reasonably related to the goal of maintaining the public health, safety, morals or general welfare. The court noted that a property owner is not necessarily entitled to the highest and best use of his property as long as a denial of

4

the request for a special exception and/or variance would not prevent the property owner from using the property for any reasonable purpose. Because there are other permitted uses in a C-2 zoning district where the property is located, Job Steele was "unable to prove that no reasonable use can be made of the property absent the approval of a truck terminal." Appellant's App. p. 16.

Job Steele now appeals the trial court's order granting the BZA's motion for summary judgment.

**Standard of Review**

When we review a zoning board's decision, our court and the trial court are bound by the same standard. Midwest Minerals Inc. v. Bd. of Zoning Appeals of Area Plan Com'n of Vigo County, 880 N.E.2d 1264, 1268 (Ind. Ct. App. 2008) (citing Scott v. Marshall County Bd. of Zoning Appeals, 696 N.E.2d 884, 885 (Ind. Ct. App. 1998)), trans. denied. We presume the determination of the board, an administrative agency with expertise in zoning matters, is correct. Id. Therefore, we will reverse only if the board's decision is arbitrary, capricious, or an abuse of discretion. Id. We will not reweigh the evidence or substitute our decision for that of the board. Id. Thus, Job Steele labors under a heavy burden in persuading our court to overturn the BZA's decision. Id.

Moreover, "our review begins with the presumption that the BZA, due to its expertise in zoning matters, reached a correct decision." Town of Munster Bd. of Zoning Appeals v. Abrinko, 905 N.E.2d 488, 491 (Ind. Ct. App. 2009). Because of that expertise, the BZA is required to issue findings tailored to address the specific facts presented to it. Id.; see also Ind. Code § 36-7-4-915 "These basic findings of fact are not sufficient to

5

support the BZA's ultimate findings if they are merely a general replication of the requirements of the ordinance at issue." Abrinko, 905 N.E.2d at 492 (citations omitted). And "[f]indings are inadequate when they 'are insufficient to permit intelligent appellate review.'" Burcham v. Metropolitan Bd. of Zoning Appeals Div. I of Marion County, 883 N.E.2d 204, 214 (Ind. Ct. App. 2008) (quoting Stytle v. Angola Die Casting Co., 783 N.E.2d 316, 322 (Ind. Ct. App. 2003), trans. denied).

In most cases, when the BZA enters general and conclusory findings the case will be remanded to the BZA for the entry of more specific findings to support its denial of the application for special exception. See e.g. Ripley County Bd. Zoning Appeals v. Rumpke of Ind., Inc., 663 N.E.2d 198, 209-10 (Ind. Ct. App. 1996), trans. denied. In this case, the BZA's findings are a mere recitation of the criteria in the zoning ordinance and whether the application for the special exception "will" or "will not" comply with those standards. Appellant's App. pp. 102-03. However, the BZA did enter specific findings supporting its denial of Job Steele's petitions for an outside storage variance and warehousing variance. Appellant's App. pp. 100-02; 104-05. Because outside storage and warehousing are essential operations of a truck terminal and the same reasons expressed in those findings were discussed during the Board's review of the application for special exception, we conclude that the record contains findings in this case that are sufficient to permit meaningful appellate review.

## I. Special Exception

"[A] special exception is a use permitted under the zoning ordinance upon the showing of certain statutory criteria[.]" S&S Enters., Inc. v. Marion County Bd. of

Zoning Appeals, 788 N.E.2d 485, 490 (Ind. Ct. App. 2003), trans. denied; see also Appellant's App. p. 279 (defining special exceptions in the Town's zoning ordinance as "those uses of land which are essentially compatible with the uses permitted in a particular zoning district" . . . but that "possess characteristics or locational qualities which require individual review and restriction in order to avoid incompatibility with the surrounding area, public services and facilities, and adjacent uses of land"). Generally, the BZA must grant a special exception once the petitioner shows compliance with the relevant statutory criteria. S&S Enters., 788 N.E.2d at 490.

> However, . . . while some special exception ordinances are regulatory in nature and require an applicant to show compliance with certain regulatory requirements (e.g. structural specifications), providing the zoning board with no discretion, some special exception ordinances provide a zoning board with a discernable amount of discretion (e.g. those which require an applicant to show that its proposed use will not injure the public health, welfare, or morals). [The applicant's] position that a board of zoning appeals must grant a special exception upon the applicant's submission of substantial evidence of compliance with the relevant criteria is true only as to ordinances falling within the former category. In other words, when the zoning ordinance provides the board of zoning appeals with a discernable amount of discretion, the board is entitled, and may even be required by the ordinance, to exercise its discretion. When this is the case, the board is entitled to determine whether an applicant has demonstrated that its proposed use will comply with the relevant statutory requirements.

Midwest Minerals Inc., 880 N.E.2d at 1268 (quoting Crooked Creek Conservation & Gun Club v. Hamilton County N. Bd. of Zoning Appeals, 677 N.E.2d 544, 547-48 (Ind. Ct. App. 1997), trans. denied).

The zoning ordinance at issue in this appeal confers upon the BZA a significant amount of discretion. Specifically, it provides:

7

The BZA shall review the particular circumstances of the Special Exception request under consideration in terms of the following standards, and approve a Special Exception only upon a finding of compliance with each of the following standards established elsewhere in this Chapter.

1. The Special Exception shall be designed, constructed, operated and maintained in a manner harmonious with the character of adjacent property and the surrounding area.

2. The Special Exception shall not inappropriately change the essential character of the surrounding area.

3. The Special Exception shall not interfere with the general enjoyment of adjacent property.

4. The Special Exception shall represent an improvement to the use of character of the property under consideration and the surrounding area in general, yet also be in keeping with the natural environment of the site.

5. The Special Exception shall not be hazardous to adjacent property, or involve uses, activities, materials or equipment which will be detrimental to the health, safety, or welfare of persons or property through the excessive production of traffic, noise, smoke, odor, fumes, or glare.

6. The Special Exception shall be adequately served by essential public facilities and services, or it shall be demonstrated that the person responsible for the proposed Special Exception shall be able to continually provide adequately for the services and facilities deemed essential to the special use under consideration.

7. The Special Exception shall not place demands on public services and facilities in excess of available capacity.

8. The Special Exception shall be consistent with the intent and purpose of this Chapter and the objectives of any currently adopted Comprehensive Plan.

Appellant's App. pp. 280-81. These criteria lack absolute objective standards against which they can be measured, and therefore, involve discretionary decision making on the part of the BZA. See Midwest Minerals Inc., 880 N.E.2d at 1269.

Job Steele bore the burden of satisfying the relevant criteria for a special exception. See id. Therefore, our court has been "cautious to avoid imposing upon remonstrators an obligation to come forward with evidence contradicting that submitted by an applicant."

8

Id. Neither those opposed to Job Steele's application, nor the BZA, were required to negate Job Steele's case. See id.

"Because remonstrators need not affirmatively disprove an applicant's case, a board of zoning appeals may deny an application for a special exception on the grounds that an applicant has failed to carry its burden of proving compliance with the relevant statutory criteria regardless of whether the remonstrators present evidence to negate the existence of the enumerated factors." Id. However, in this case, the BZA denied Job Steele's application for a special exception, at least in part, based upon evidence presented by the remonstrators; therefore, we must determine whether the BZA's decision was based upon substantial evidence. See id.

> When determining whether an administrative decision is supported by substantial evidence, the receiving court must determine from the entire record whether the agency's decision lacks a reasonably sound evidentiary basis. Thus, we have noted that evidence will be considered substantial if it is more than a scintilla and less than a preponderance. In other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Id. (internal citations omitted).

In this case, the BZA determined that Job Steele's application for a special exception to operate a truck terminal failed to satisfy five of the eight criteria listed in the zoning ordinance. The BZA concluded that allowing operation of a truck terminal on the property 1) would not be "harmonious with the character of adjacent property and the surrounding area;" 2) would "inappropriately change the essential character of the surrounding area;" 3) would not "represent an improvement to the use of character of the property under consideration and the surrounding area in general;" 4) would be

9

"hazardous to adjacent property, or involve uses, activities, materials or equipment which will be detrimental to the health, safety, or welfare of persons or property through the excessive production of traffic, noise, smoke, odor, fumes, or glare;" and 5) would not be "consistent with the intent and purpose of this Chapter and the objectives of any currently adopted Comprehensive Plan." See Appellant's App. pp. 102-03, 126-35, 280-81. The BZA's conclusions concerning the zoning criteria are supported by the following substantial evidence.

The property is located in a commercial C-2 zoning district and the industrial uses Job Steele contemplated are generally not permitted in C-2 districts. The general purpose of a C-2 zoning district is to create an area for the placement of businesses that meet the everyday shopping needs of the community. Operation of a truck terminal with accompanying warehousing and outside storage would be incongruous with neighboring retail businesses.

Specifically, the adjacent property owner operates a recreational vehicle dealership. Visible outside storage of steel coils would negatively affect the appearance of the area and the character of the neighboring commercial business. Also, operation of a truck terminal would require forklifts to transfer loads creating significant noise, which would likely disrupt nearby commercial business owners and their customers.

Substantial evidence also supports the BZA's concern that operation of a truck terminal on the property would create an additional traffic problem in an area that already suffers from traffic congestion. By its very nature, operation of a truck terminal would bring additional semi-tractors and trailers into the area adding to the existing problem of

10

excessive truck traffic on U.S. Highway 20. It is also reasonable to conclude the entry and exit of trucks to and from Job Steele's property would be difficult given the existing truck congestion on the highway.

Moreover, the Town's comprehensive plan provides that industrial uses should be located where there is safe and convenient traffic access. And the goal of the comprehensive plan is to promote the redevelopment of a strong central commercial core, and Job Steele's proposed operation of a truck terminal is not consistent with that goal. The comprehensive plan also expresses the desire to improve and beautify major thoroughfares and expressways as entrances in the Town. The proposed use is inconsistent with that goal because the property is visible from both Highway 20 and Interstate 94.

In light of this evidence, we conclude that the BZA acted within its discretion when it denied Job Steele's application for a special exception to operate a truck terminal in a C-2 zoning district. Specifically, Job Steele did not meet its burden of proving that its proposed use satisfied all eight criteria listed in the Town's Zoning Ordinance.[1] Consequently, the BZA's decision to deny Job Steele's application for a special exception was not arbitrary, capricious, or an abuse of discretion.

---

[1] Job Steele also argues that the BZA and trial court erroneously interpreted the definition of a "truck terminal" in the Town's zoning ordinance. Specifically, Job Steele argues that the BZA and trial court rendered the term "storage" in that definition meaningless by concluding that the term did not include warehousing and outside storage. Because we affirm the BZA's denial of Job Steele's application for a special exception, we need not consider that issue.

11

## II. Equal Protection

Finally, Job Steel claims that the BZA violated its equal protection rights under Article I, Section 23 of the Indiana Constitution because the denial of its application for a special exception restricts the use for its property more than "the uses and privileges allowed for the surrounding properties[.]" Appellant's Br. at 13. Job Steele also asserts that the BZA's regulation of its property does not "promote public health, safety, morals or welfare, within the authorized police power of the state" and "such invasion of property rights comes within [the] ban of the Fourteenth Amendment to the United States Constitution and cannot be sustained." Id. at 14.

Article 1, Section 23 of the Indiana Constitution provides that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."[2] Like all citizens, property owners, and business owners in the Town, Job Steele was not denied the opportunity to seek a special exception and variances to the Town's zoning laws. Job Steele does not claim that it was treated differently than any other person appearing before the BZA during the hearings held on its application for a special exception. Job Steele also does not allege any violation of due process in the adjudication of its application. Job Steele alleges discrimination based simply on the fact that its application for a special exception was denied, and other individuals have successfully petitioned the

---

[2] In Collins v. Day, our supreme court held that legislation that distinguishes between classes of people is constitutional if the disparate treatment is "reasonably related to inherent characteristics [that] distinguish the unequally treated classes" and if the preferential treatment is "uniformly applicable and equally available to all persons similarly situated." 644 N.E.2d 72, 80 (Ind. 1994).

BZA for a special exception to operate similar trucking based businesses in the past. The mere fact that one property owner was denied a special exception or variance while others similarly situated were granted the exception or variance sought does not, in itself, establish that "the difference in result is due either to impermissible discrimination or to arbitrary action." See Metropolitan Bd. of Zoning Appeals of Marion County v. McDonalds Corp., 489 N.E.2d 143, 144 (Ind. Ct. App. 1986) (citation omitted), trans. denied.

Finally, to the extent Job Steele argues that its constitutional rights were violated because of the BZA's regulation of its property, we observe that government units may regulate the use of property. However, if regulation goes too far, it will be recognized as a taking. Metropolitan Development Comm'n of Marion County v. Schroeder, 727 N.E.2d 743, 753 (Ind. Ct. App. 2000) (citing Board of Zoning Appeals v. Leisz, 702 N.E.2d 1026, 1028 (Ind. 1998)), trans. denied. Because there was no physical invasion of Job Steele's property, we must only determine if the regulations deny all economically beneficial use of the property. See id. Job Steele has not established that the denial of its application for a special exception and variances prevents it from using the property for any reasonable purpose, which would deny all economically beneficial use of the property. There are many permitted uses listed in the zoning ordinance for property situated in a C-2 zone, and the property may still be used to operate a truck repair business, which exception was granted in 1980 and continues to remain with the property today.

13

**Conclusion**

The BZA's decision to deny Job Steele's application for a special exception to operate a truck terminal was not arbitrary, capricious or an abuse of discretion. Moreover, Job Steele's claim that its constitutional rights were violated lacks evidentiary support and is unavailing

Affirmed.

KIRSCH, J., and MAY, J., concur.