The **METROPOLITAN BOARD OF ZON-ING APPEALS OF MARION COUNTY, Indiana, DIVISION II, Appellant (Respondent),**

v.

**McDONALD'S CORPORATION, Appellee (Petitioner).**

**No. 2–484–A–107.**

Court of Appeals of Indiana, Second District.

July 31, 1985.

David F. Rees, Asst. Corp. Counsel, City-County Legal Div., Indianapolis, for appellant.

Donald F. Foley, Foley, Cutter & Abbott, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

This is an appeal by respondent-appellant Metropolitan Board of Zoning Appeals of Marion County, Indiana, Division II (Board) from the trial court's reversal of the Board's decision against petitioner-appellee McDonald's Corp. (McDonald's) which denied McDonald's a variance to place an eighty-foot business sign at 4541 South Emerson Avenue in Indianapolis, claiming

that the trial court erred in accepting supplemental evidence (trial de novo), that the trial court erred in finding the grounds for the variance were established as a matter of law, and that the trial court erred in finding a denial of the variance constituted a denial of equal protection of the law.

We reverse.

## FACTS

In April of 1983, McDonald's purchased commercially zoned property at 4541 South Emerson Avenue in the City of Indianapolis for the purpose of building a restaurant. The property is situated approximately 1,000 feet south of the intersection of Emerson Avenue and Interstate 465 (I–465). McDonald's began construction of the restaurant in May of 1983 and later petitioned for a variance from the sign regulations of the Indianapolis City Ordinances on June 17, 1983. McDonald's sought a variance from the sign height ordinance in order to construct an eighty-foot business sign directed toward westbound traffic on I–465.

The variance sought was from the ordinance limiting signs to a height of forty feet, except when the "street elevation to which the sign is oriented is more than ten (10) feet greater than grade of elevation at the base of the sign structure." INDIANAPOLIS AND MARION COUNTY, IND., CODE part 19, art. 14, § 14.03(16)–(17) (1975). The ordinance also prescribes standards for such tall signs.

"Performance standards for tall signs:
 i. Orientation to specific highway interchanges: Tall signs may be used only in relation to interchanges on I–465 and interstate highways between I–465 and the Marion County boundary line.
 ii. The installation and use of signs of heights in excess of forty (40) feet above grade elevation, referred to as tall signs, as described in item (17) shall comply with the standards of this section (22).
 iii. Signs oriented to traveling public: Only signs designed to give information in the specific interest of the traveling public, including, identification of places for camping, lodging, eating and vehicle services of gasoline service stations, shall be permitted to be constructed to heights in excess of forty (40) feet.
 iv. Sign location: Tall signs shall be located only on the premises of the referred use or activity.
 v. Distance of use from highway to which oriented: The use to which the tall sign refers shall be located within one thousand three hundred twenty (1,320) feet of the intersection of the center line of the highway to which oriented and the local service street. In no event shall the tall sign be closer to the right-of-way of the main-traveled way of the interstate highway than the minimum setback specified in section 14.03, (21), of this ordinance.
 vi. Message on tall signs: The message contained on the tall sign shall be limited to identification of the use or activity and including brand identification or trademark.
 vii. Sign surface area: The sign surface area for a tall sign shall not exceed two hundred forty (240) square feet.
 viii. Number of pole signs: Only one (1) tall sign shall be permitted for any one use, such sign shall constitute the only pole sign permitted on the premises of the referred use.
 ix. Removal of tall sign: Any tall sign shall be removed upon the permanent cessation of its referred use."

*Id.* at § 14.03(22).

McDonald's constructed a large restaurant on the site that was designed to handle a large number of customers who were highway travelers. McDonald's had long desired to build a restaurant near the Emerson Avenue and I–465 interchange. An earlier attempt to build a restaurant north of I–465 in Beech Grove and oriented to

I–465 travelers was frustrated when the Beech Grove Zoning Board, in January of 1977, denied McDonald's request for a 120-foot business sign, so no restaurant was built there.

McDonald's requested a sign height variance from the Board because a pre-existing, multi-storied Holiday Inn Hotel was positioned between the restaurant and I–465. It was argued that McDonald's was entitled to the variance because the obstruction from the Holiday Inn and the lack of a tall sign caused a loss of approximately 15 to 20 per cent in sales. Also emphasized was that, according to its calculations, the sign height variance of eighty feet was only slightly taller than the seventy-three foot sign permissible under the exception of the above cited ordinance. Evidence was tendered of other sign height variances granted by the Board or by the trial courts. The sign height variance was proffered as a boon to the highway traveler, the intent being "to provide visibility to the motoring public and to provide safe exit to the motoring public." *Record* at 65.

Steven Granner (Granner), a Board staff member, testified that topographic maps indicated a difference between street and grade which would allow only a fifty-three-foot sign under the ordinance. As such, the requested sign height variance from the ordinance was much greater than that suggested by McDonald's. Granner also argued that there was no need for a variance because at the point where a motorists's view of McDonald's becomes obstructed by the Holiday Inn Hotel it is too late for the motorist to exit safely. Finally, Granner presented an aerial photograph, along with topographic maps, which indicated that a fifty-three-foot sign, conforming to the city ordinance, could be positioned on the property and still be viewed by motorists on I–465.

The Board denied the variance on July 19, 1983. McDonald's petitioned for a writ of certiorari which was granted October 7, 1983 and the trial court granted McDonald's petition to supplement the evidence on November 7, 1983. Trial to the court took place on December 13, 1983. At trial, the court overruled the Board's objection to McDonald's extensive supplemental evidence which was presented in the form of testimony, affidavits, and photographic exhibits.

McDonald's presented testimony and photographic exhibits regarding elevation tests conducted to establish whether a sign complying with the ordinance would be visible from I–465. Numerous exhibits were also presented with the object of establishing that prior sign height variances were regularly granted based on obstructions. Other evidence showed McDonald's expectations of numerous highway-related customers, the extra construction costs of serving such a clientele, and projected lost sales from the absence of a tall sign.

The Board presented the testimony of Granner, who testified that most tall signs near I–465 were holdovers established under pre-1972 ordinances and thus were not evidence of a conscious plan by the Board to discriminate against restaurants in general or McDonald's in particular. Granner also distinguished sign height variances granted under the 1972 ordinance as conditional, i.e., that owners could retain the tall signs only so long as the view of a lower sign should remain obstructed. He reiterated that the Holiday Inn did not effectively obstruct motorists' view of McDonald's on I–465, also observing that McDonald's own photographic exhibits confirmed this fact.

The trial court found in favor of McDonald's, basing its decision on two independent grounds. First, the trial court found that the "petitioner proved the three statutory grounds for the grant of a variance, as required by IC 36–7–4–918(H) ... as a matter of law...." *Record* at 131. Secondly, the trial court found that "the decision of the Board was arbitrary, illegal and contrary to law and a denial of petitioner's right to equal protection of the law under the Indiana Constitution and the 14th Amendment of the United States Constitution and the same is hereby reversed." *Record* at 133.

The Board now appeals the reversal by the trial court.

## ISSUES

Because we reverse, we need address only two issues:

1. Whether the trial court erred in finding that the grounds for the variance were established as a matter of law?
2. Whether the trial court erred in finding that the Board's denial of the variance constituted a violation of equal protection of the law?

## DECISION

ISSUE ONE—Whether the trial court erred in finding that the grounds for the variance were established as a matter of law?

PARTIES' CONTENTIONS—The Board contends that the trial court's judgment, which reversed the denial of the variance, was erroneous because the Board produced substantial evidence contradicting McDonald's need for a variance from the ordinance. As such, McDonald's failed to prove as a matter of law the statutory elements upon which a variance could be granted.

McDonald's responds that new statutory criteria have lessened the showing required for the granting of a variance. McDonald's further contends that under this new standard it established, as a matter of law, its need for the sign height variance.

CONCLUSION—The trial court erred in reversing the decision of the Board because evidence regarding the statutory criteria for the sign height variance was in conflict and not proven as a matter of law.

 A trial court is limited in its *review* of decisions of administrative agencies granting or denying variances. Review is according to standards established by Ind. Code 36–7–4–1009 (1982).[1]

1. For clarity's sake, we note that the provisions of the Administrative Adjudication Act, codified at I.C. 4–22–1–1 to –30, do not apply here because the Board is not an agency of statewide

"The court may determine the sufficiency of the statements of illegality contained in the petition, without further pleadings, and may make its determination and render its judgment with reference to the legality of the decision of the board of zoning appeals, on the facts set out in the return to the writ of certiorari. *If the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence to supplement the evidence* and facts disclosed by the return to the writ of certiorari, *but the review may not be by trial de novo.* In passing on the legality of the decision of the board, the court may reverse, affirm, or modify the decision of the board brought up for review."

*Id.* (emphasis supplied). The Board's decision may only be examined to determine if it was incorrect as a matter of law. *Metropolitan Bd. of Zoning Appeals v. Gunn* (1985), Ind.App., 477 N.E.2d 289; *Board of Zoning Appeals v. Cochran* (1983), Ind. App., 456 N.E.2d 1047. For the trial court to reverse a decision of the Board which denied a variance, the trial court must find that each of the statutory prerequisites for the variance has been established as a matter of law. *Metropolitan Bd. of Zoning Appeals v. Standard Life Ins. Co.* (1969), 145 Ind.App. 363, 251 N.E.2d 60, *trans. denied; Boffo v. Boone County Bd. of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119. This means "the evidence *supporting* each prerequisite must be such that no reasonable man could fail to accept that prerequisite as proved." *Standard Life, supra,* at 366, 251 N.E.2d at 61.

In order to obtain a sign height variance, McDonald's was required to show that:

"(1) The approval will not be injurious to the public health, safety, morals, and general welfare of the community.

(2) The use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner; and

jurisdiction. *See South Bend Community School Corp. v. National Educ. Assoc.* (1983), Ind.App., 444 N.E.2d 348.

(3) The strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property. However, the zoning ordinance may establish a stricter standard than the 'practical difficulties' standard prescribed by this subdivision."

IC 36–7–4–918.5 (Supp.1984) (former version at IC 36–7–4–918(h)) [hereinafter cited as the area variance statute]. This statute has not been construed since its recent amendment.

■ There is a distinction between variances from standards of height or area, as requested here, which are typically termed "area" or "nonuse" variances, and use variances which, as their name implies, permit a change in the use of property. *See* 3 A. RATHKOPF & D. RATHKOPF, THE LAW OF ZONING AND PLANNING § 38.01 (4th ed. 1985); 82 AM.JUR.2D ZONING AND PLANNING § 256 (1976).

The distinction becomes important because establishing the need for an area variance generally is less onerous than the evidentiary showing required for a use variance. "An area variance does not affect the use of the land, is less drastic in effect and does not pose the threat of an incompatible use in the neighborhood." AM.JUR.2D, *supra*, at § 278. This distinction is reflected in the language of the statutes controlling area and use variances. In order to prove the need for a *use* variance, the petitioner must establish five criteria;[2] a petitioner under the *area* variance statute must meet only three criteria. More importantly, the area variance statute requires a showing that "[t]he strict applica-

tion of the terms of the zoning ordinance will result in *practical difficulties* in the use of the property." IC 36–7–4–918.5(3) (emphasis supplied). This showing of practical difficulties contrasts with the use variance statute which requires proof that "[t]he strict application of the terms of the zoning ordinance will constitute an *unnecessary hardship* if applied to the property for which the variance is sought." IC 36–7–4–918.4(4) (emphasis supplied). Foreign courts agree that the standards of "practical difficulties" and "unnecessary hardship" overlap and are distinguishable only in degree. *See* A. RATHKOPF & D. RATHKOPF, *supra*, at § 38.05[1].

■ While we observe that the standard of "practical difficulties" is imprecise and only vaguely different from the standard of "unnecessary hardship," we must attempt to give meaning to the terms employed by the legislature. Those courts which have applied the standard of "practical difficulties" have generally required an area variance petitioner prove "significant economic injury" from the enforcement of the zoning ordinance. *Id.* at § 38.05[4] (citing *Cowan v. Kern* (1977), 41 N.Y.2d 591, 363 N.E.2d 305, 394 N.Y.S.2d 579). Other considerations in determining the existence of practical difficulties are whether the injury is self-created or self-imposed and whether any feasible alternative is available, within the terms of the ordinance, which achieve the same goals of the landowner. A. RATHKOPF & D. RATHKOPF, *supra*, at § 38.05[4].

**2.** IC 36–7–4–918.4 (Supp.1984) provides:
"ADVISORY–METRO. A board of zoning appeals shall approve or deny variances of use from the terms of the zoning ordinance. The board may impose reasonable conditions as a part of its approval. A variance may be approved under this section only upon a determination in writing that:
(1) The approval will not be injurious to the public health, safety, morals, and general welfare of the community;
(2) The use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;

(3) The need for the variance arises from some condition peculiar to the property involved;
(4) The strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and
(5) The approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter."
(former version at IC 36–7–4–918(f) (1982)) [hereinafter cited as the use variance statute].

■ Turning to the facts before us, Mc-Donald's alleged that with the sign height variance McDonald's would increase sales by fifteen to twenty per cent. However, McDonald's never alleged that its restaurant business was unprofitable, only that sales had not met their projected level. While we would agree that McDonald's presented some evidence of economic injury, we cannot say under our standard of review, that the Board erred as a matter of law when it concluded that such injury was not so significant that a variance should be granted.

■ In reviewing the evidence presented first to the Board and later to the trial court, we observe that the evidence tended to be against McDonald's on the essential question whether a sign could be constructed which complied with the ordinance and still be visible from I–465. Granner presented testimony before the Board that McDonald's could position the sign at a different location on the property, at a height which complied with the ordinance and which would still be visible from I–465. The numerous photographic exhibits presented to the trial court by McDonald's did not refute Granner's testimony regarding a practical alternative to the variance. In light of this conflicting evidence, we cannot say that the Board erred in denying the variance.

■ McDonald's purchased the restaurant property at South Emerson with full knowledge of the local topography and zoning ordinances. Prior plans to build a restaurant north of I–465 in Beech Grove were not carried out when a sign height variance there was denied. The evidence here shows, however, that construction began on a more expensive style restaurant before McDonald's applied for a sign height variance. While such additional costs of construction might constitute economic injury, and thus justify a variance, these injuries are to a degree self-imposed. *Cf. Board of Zoning Appeals v. Waskelo* (1960), 240 Ind. 594, 168 N.E.2d 72 (unnecessary hardship not shown when petitioner sold lot, leaving a lot too small for building a family residence within the terms of the zoning ordinance.).

■ We have concluded that there was conflicting evidence before the Board as to the denial of a variance, so that the Board's decision was not illegal as a matter of law and the trial court therefore committed reversible error by reversing the Board's decision. Thus, we need not reach the trial de novo issue. It is obvious from the record, however, that McDonald's only presented evidence to the Board that its restaurant was obstructed from the view of travelers on I–465 because of the presence of the Holiday Inn, but at the trial evidence of additional obstructions was also presented. This evidence, inasmuch as it presented a new factual issue to be resolved by the trial court, was new and not merely supplemental and could not properly be considered by the trial court or here on review. *See Metropolitan Bd. of Zoning Appeals v. Gateway Corp.* (1971), 256 Ind. 326, 268 N.E.2d 736; *Laws v. Lee* (1984), Ind.App., 471 N.E.2d 1229.

ISSUE TWO—Whether the trial court erred in finding that the Board's denial of the variance constituted a violation of equal protection of the law?

PARTIES' CONTENTIONS—The Board argues that the granting of variances is inherently discretionary, and that the Board properly exercised discretion in not granting the sign height variance to McDonald's. In addition, the Board argues that McDonald's has failed to show that the requirements of the ordinance as applied to McDonald's were so injurious as to constitute a taking.

McDonald's replies that under the present sign ordinance, restaurants are, like gasoline stations, a favored business. As such, the denial of sign height variances to restaurants, in light of prior sign variances granted to gas stations, constitutes a denial of equal protection of the law.

CONCLUSION—The trial court erred in finding that the denial of the variance constituted an unconstitutional taking because McDonald's failed to allege and prove that

the ordinance as applied prevented use of the property for any reasonable purpose.

Every burden placed upon private property by a zoning ordinance is not necessarily a confiscation or taking. *City of Evansville v. Reis Tire Sales, Inc.* (1975), 165 Ind.App. 638, 333 N.E.2d 800, *trans. denied.* To establish that an unconstitutional taking occurred, McDonald's had to show that the zoning ordinance prevents the use of the property for *any* reasonable purpose. *Gateway, supra; Reis Tire, supra; Metropolitan Bd. of Zoning Appeals v. Sheehan Constr. Co.* (1974), 160 Ind.App. 520, 313 N.E.2d 78. Here, McDonald's has merely alleged that its business was less profitable without the tall sign; it did not argue that every reasonable use of the property was precluded by the ordinance. McDonald's simply failed to allege or prove that the application of the sign height ordinance constituted an unconstitutional taking.

The judgment of the trial court is reversed, and the trial court is directed to affirm the decision of the Board and to take such other action as may be consistent with this opinion.

SHIELDS, J., concurs.

NEAL, J. (sitting by designation), concurs.