**EDWARD ROSE OF INDIANA, LLC, Appellant–Petitioner,**

v.

**METROPOLITAN BOARD OF ZONING APPEALS, DIVISION II, INDIANAPOLIS–MARION COUNTY, Indiana, Appellee–Respondent.**

No. 49A02–0809–CV–812.

Court of Appeals of Indiana.

June 15, 2009.

Russell L. Brown, Clark, Quinn, Moses, Scott & Grahn, LLP, Indianapolis, IN, Attorney for Appellant.

Jonathan L. Mayes, Alexander Will, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Edward Rose of Indiana, LLC ("Edward Rose"), appeals the trial court's decision affirming the Metropolitan Board of Zoning Appeals, Division II, Indianapolis Marion County's (the "BZA") denial of Edward Rose's petition for a variance. On appeal, Edward Rose raises one issue, which we restate as whether the trial court properly affirmed the BZA's denial of Edward Rose's petition for a variance. Concluding the trial court's affirmation of the BZA's denial was not improper, we affirm. We also address the trial court's admission of supplemental evidence pursuant to Indiana Code section 36–7–4–1009.

### Facts and Procedural History [1]

Since 1991, Edward Rose has displayed a 16.75–foot tall, 409.75–square–foot two-way pole sign on the premises of its "Sundance at the Crossing" apartment complex (the "Sign"), which is located in Indianapolis between McFarland Boulevard and I–65 approximately three miles south of the I–65/I–465 interchange. The Sign is visible to both northbound and southbound drivers on I–65 and contains the complex's contact information along with the caption, "Your direct connect to downtown." Trial Court Transcript at 48. Three other on-premises signs containing similar information are at the complex's entrances on McFarland Boulevard; there is no direct access to the complex from I–65.

In March 2007, Edward Rose received notice that the Sign was in violation of the consolidated city and county zoning ordinance, specifically provisions limiting the Sign to a height of four feet above grade and its total display area to forty feet.[2] As a result, on June 6, 2007, Edward Rose filed a petition for a variance with the City of Indianapolis Department of Metropolitan Development (the "Department"). The Department recommended that the BZA deny the petition, in part because removal of the Sign would not result in practical difficulties in the use of the property. By a 4–1 vote, the BZA agreed with the department's recommendation, denied the petition, and subsequently made the following findings of fact:

1. We heard oral argument on May 8, 2009, at Franklin College in Franklin, Indiana. We thank counsel for their capable advocacy, and extend our gratitude to the Johnson County Bar Association and the students, faculty, and administration at Franklin College for their hospitality.

2. The ordinance also states that even if a sign meets the height and area requirements, it can only be displayed on the property for one year. It is unclear from the record whether that provision was included in the citation.

1. Based on the evidence submitted, the petitioner failed to meet his burden of proof to show that the grant of the variance to legally establish [the Sign] would not be injurious to the public health, safety, morals and general welfare of the community.

2. Based on the evidence submitted, the petitioner failed to meet his burden of proof to show that the grant of the variance to legally establish ... [the Sign] would not cause the area adjacent to the subject property to be affected in a substantially adverse manner.

3. Based on the evidence submitted, the petitioner failed to meet his burden of proof to show that compliance with the requirements of the zoning ordinance would constitute a practical difficulty on the use of the subject property.

Appellant's Appendix at 124. These findings track the statutory criteria required to grant a "development standards" variance.[3] *See* Ind.Code § 36–7–4–918.5(a).

With its administrative remedies exhausted, on September 19, 2007, Edward Rose filed a petition for writ of certiorari with the trial court. On April 15, 2008, the trial court conducted a hearing, at which it received supplemental evidence in the form of testimony from a professional land use planner and three employees of Edward Rose, as well as documentary evidence. Based on this evidence, as well as the evidence admitted during the BZA proceeding, the trial court concluded that Edward Rose established the first two statutory elements as a matter of law. As to the third element, however, the trial court concluded as follows:

Although Petitioner presented evidence that the Sign's removal would have a negative impact on the profitability of Sundance in that it would decrease leasing activity and increase advertising costs, this Court, under the applicable standard of review, cannot find that the BZA abused its discretion in concluding that Petitioner failed to prove that strict application of the terms of the ordinance will result in practical difficulties in the use of the property. Based upon the evidence, a reasonable person could conclude that the Petitioner had not proven a "significant economic injury."

Appellant's App. at 16. Edward Rose now appeals.

*Discussion and Decision*

I. Standard of Review

 This court has articulated the standard of review to apply on appeal from the denial of a petition for a variance, as well as on appeal from the trial court's affirmation of such a denial:

When a trial court conducts a writ of certiorari of a BZA hearing, it must determine that the decision was correct as a matter of law. The trial court may not conduct a trial de novo, and may not substitute its decision for that of the BZA absent a finding of illegality. An abuse of discretion standard is applied, and the trial court cannot reweigh the evidence or substitute its decision for that of the BZA. In order to reverse the BZA's decision, the reviewing court must find, after resolving all doubts in

---

**3.** The specific variance at issue in this case is referred to as a "development standards" variance because it relates to deviation from height, bulk, or area requirements specified by ordinance. *See* Ind.Code § 36–7–4–918.5(a). There are other types of variances, *see, e.g.,* Ind.Code § 36–7–4–918.4 (describing the statutory requirements to obtain a "use" variance), but they do not concern this case, and therefore we will use the general term "variance" to describe the development standards variance at issue here.

favor of the BZA's decision, that each of the statutory requirements have been met as a matter of law. Generally, if there is sufficient evidence to support the BZA's decision, it must be upheld. On appeal, this court's review is restricted by the same standard. [W]hen, as here, the trial court enters specific findings of fact and conclusions of law, we determine first whether the evidence supports the findings and second, whether the findings support the judgment.

*Green v. Hancock County Bd. of Zoning Appeals*, 851 N.E.2d 962, 965 (Ind.Ct.App. 2006) (citations omitted). Moreover, statutory requirements have been met as a matter of law if no reasonable person could conclude otherwise. *See Reinking v. Metro. Bd. of Zoning Appeals*, 671 N.E.2d 137, 142 (Ind.Ct.App.1996).

## II. Propriety of Trial Court's Decision

Indiana Code section 36–7–4–918.5(a) requires a petitioner to establish the following three elements to obtain a variance:

(1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;

(2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner; and

(3) the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property.[4]

As mentioned above, the trial court concluded Edward Rose established the first two elements as a matter of law, and the BZA does not challenge this conclusion on appeal. The BZA's concession means this appeal turns on whether Edward Rose

established the third element as a matter of law. Regarding this element, it is undisputed that strict application of the zoning ordinance will result in removal of the Sign. We therefore frame this dispositive issue as whether Edward Rose proved as a matter of law that removal of the Sign will result in practical difficulties in the use of the property.

### A. Supplemental Evidence and Indiana Code Section 36–7–4–1009

Before addressing whether Edward Rose proved practical difficulties as a matter of law, we wish to comment on an issue that was discussed briefly at oral argument and extensively before the trial court. Indiana Code section 36–7–4–1009 states that the trial court's review on petition for writ of certiorari is limited to determining the legality of the BZA's decision, but then goes on to state that "[i]f the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence to supplement the evidence and facts disclosed by the return to the writ of certiorari, but the review may not be by trial de novo." During the BZA proceeding, the only evidence presented regarding practical difficulties was opinion testimony from an Edward Rose representative that a "significant" number of leases was attributable to the Sign, appellant's app. at 136, and opinion testimony from a Department employee that any leases lost as a result of removing the Sign could be recovered by renting space on a nearby billboard or through "more traditional means of advertising the apartment complex by insert flyers and things like that," *id.* at 137.

During the certiorari proceeding, Edward Rose provided a significant amount

---

4. The statute also permits the applicable zoning ordinance to establish a standard that is stricter than the statutory "practical difficul-

ties" standard, Ind.Code § 36–7–4–918.5(a), but the ordinance at issue here does not employ a stricter standard.

of supplemental evidence, eliciting testimony from a land use planner and three Edward Rose employees and introducing marketing reports from 2005 to 2007 that catalogued the number of leases attributable to Edward Rose's four on-premises signs. The purpose of this evidence was to support Edward Rose's contention from the BZA proceeding that a "significant" number of leases was attributable to the Sign and to refute the Department's claim that Edward Rose could recover whatever lost leases were attributable to the Sign by using other types of advertisements. The evidence also strengthened Edward Rose's overall argument that removal of the Sign will result in practical difficulties.

Although the trial court admitted this evidence over repeated objections by the BZA, it was careful to note on several occasions the apparent inconsistency between the scope of its review, which was limited to examining the legality of the BZA's decision, and the fact that it was hearing evidence that was never before the BZA. *See, e.g.,* Trial Court Tr. at 52–53, 55, 81–82. The following observation by the trial court illustrates this point:

> I can't recall in seven plus years ever taking supplemental evidence in a case and I just think practically speaking we've got X-number of minutes to present a case before a Board of Zoning Appeals pursuant to its rules and that time is really somewhat limited. And here we are—and I promise everybody, I don't have anything else scheduled this morning so I can stay here all morning and entertain this additional evidence and testimony but here we're going to take several hours in presenting "supplemental evidence" to the trier of fact, sitting as a trial court to review—to review the record before the BZA. I mean we can take it, we can call it, I can say yes its supplemental and we can go

on for hours and boy aren't we opening ourselves up potentially for problems? *Id.* at 52–53. We think the trial court's instincts are correct to the extent it felt it should have sustained the BZA's objections to Edward Rose's supplemental evidence on the ground that considering such evidence was tantamount to conducting a trial de novo on the issue of practical difficulties, but to explain why that is the case, additional discussion of writs of certiorari in general, and Indiana Code section 36–7–4–1009 in specific, is required.

A writ of certiorari is a writ from an upper tribunal directing a lower tribunal "to deliver the record in the case for review." Black's Law Dictionary 241 (8th ed.2004). Our supreme court has explained that at common law, the writ would lie where the inferior tribunal either exceeded its jurisdiction or proceeded illegally and there was no other method for reviewing such proceedings. *First Merchants Nat. Bank & Trust Co. v. Crowley,* 221 Ind. 682, 685, 50 N.E.2d 918, 919 (1943). Indiana Code section 36–7–4–1009 is consistent with the second purpose of the common law writ, as it states that the trial court's review is limited to determining the legality of the BZA's decision. *See also Bd. of Zoning Appeals of City of Indianapolis v. Am. Fletcher Nat. Bank & Trust Co.,* 139 Ind.App. 9, 12, 205 N.E.2d 322, 323–24 (1965) ("The terms of the statute are clear in that the decision of the Board can only be reviewed by the trial court to determine the legality of such decision; that is to say, was the Board's determination wrong as a matter of law?").

With this understanding of the writ in mind, it is difficult to say that a trial court is acting in accordance with Indiana Code section 36–7–4–1009 when it determines the legality of a BZA decision on the basis of evidence that was not before the BZA. In such instances, the trial court's

function is more accurately described as conducting a trial de novo. *See* Black's Law Dictionary 1544 (8th ed.2004) (defining "trial de novo" as "a new trial on the entire case . . . conducted as if there had been no trial in the first instance"); *cf. id.* at 864 (defining "de novo judicial review" as "[a] court's nondeferential review of an administrative decision, [usually] through a review of the administrative record *plus any additional evidence the parties present* " (emphasis added)). That appears to be precisely what happened in this case: Edward Rose presented some evidence regarding practical difficulties during the BZA proceeding and supplemented that evidence during the certiorari proceeding, but the trial court used the supplemental evidence as the basis for its conclusion that Edward Rose could not prove practical difficulties as a matter of law. *See* Appellant's App. at 16. In other words, the trial court did not determine whether the BZA's conclusion of no practical difficulties was illegal (i.e. incorrect as a matter of law) by reviewing the evidence presented during the BZA proceeding, but instead made such a determination by reviewing the supplemental evidence presented during the certiorari proceeding. We reiterate that under such circumstances, the trial court's instincts seem correct; it should have concluded that its admission of Edward Rose's supplemental evidence was inconsistent with certiorari review under Indiana Code section 36–7–4–1009. *See Fletcher,* 139 Ind.App. at 11, 13, 205 N.E.2d at 323, 324 (concluding trial court conducted an impermissible trial de novo where the BZA heard evidence on issues such as whether a variance would be injurious to the community's general welfare and whether adjacent properties would be adversely affected, and the trial court reversed the BZA's decision on the basis of supplemental evidence relating to such issues).

Although the foregoing provides an example of when supplemental evidence should not be admitted, it is worth providing some examples of when it may be appropriate, as the statute clearly contemplates cases where supplemental evidence may be admitted without running afoul of the trial de novo prohibition. Courts in other jurisdictions addressing statutes similar to Indiana Code section 36–7–4–1009 have recognized the following non-exhaustive list of instances where the trial court may properly consider supplemental evidence, while at the same time avoiding a trial de novo: 1) when the record before the BZA is incomplete because the aggrieved party was refused an opportunity to be fully heard or the BZA excluded relevant evidence; 2) when good and sufficient cause is shown for the failure to have offered the evidence to the BZA; 3) when the record presented to the trial court does not contain all the evidence actually presented to the BZA; 4) when the BZA's record fails to present the hearing in sufficient scope to determine the merit s of the appeal; and 5) when new evidence is discovered after the BZA's proceedings. *Klinger v. Oneida County,* 149 Wis.2d 838, 440 N.W.2d 348, 351 (1989); *see also id.* at 352 n. 9 (citing cases from other jurisdictions). We also note that this court's opinion in *Sexton v. Jackson County Bd. of Zoning Appeals,* 884 N.E.2d 889, 894–95 (Ind.Ct.App.2008), recognizes perhaps another instance where supplemental evidence is appropriate, namely, where the supplemental evidence is probative of whether the BZA members violated the Indiana Open Door Law.

To summarize, we offer the foregoing discussion to clarify the proper role of a trial court when conducting certiorari review pursuant to Indiana Code section 36–7–4–1009 and to suggest some situations where supplemental evidence is and is not

appropriate in conducting that review. Although we are skeptical of the trial court's decision to admit the supplemental evidence in this case, we emphasize the BZA does not challenge that decision by way of cross-appeal. Accordingly, we proceed to determine whether, in light of the evidence presented during the BZA hearing and the supplemental evidence presented during the certiorari hearing, Edward Rose proved as a matter of law that removal of the Sign will result in practical difficulties in the use of the property.

### B. Practical Difficulties and Indiana Code Section 36–7–4–918.5(a)

Edward Rose argues that it proved practical difficulties as a matter of law. In *Metro. Bd. of Zoning Appeals v. McDonald's Corp.,* 481 N.E.2d 141, 146 (Ind. Ct.App.1985) (citations omitted), *clarified on other grounds on reh'g,* 489 N.E.2d 143, *trans. denied,* this court articulated several factors for a reviewing court to consider in determining whether compliance with a zoning ordinance will result in practical difficulties: 1) whether "significant economic injury" will result if the ordinance is enforced; 2) whether the injury is self-created; and 3) whether there are feasible alternatives. We do not read *McDonald's* as suggesting that these factors are exclusive, but because the parties limit their arguments to these factors only, we will address them in turn.

### 1. Significant Economic Injury

■ Edward Rose argues it will suffer significant economic injury because removal of the Sign will require a thirty-four percent annual increase in its advertising budget to recover the leases that would have been generated by the Sign. In terms of dollars, Edward Rose contends that the thirty-four percent increase "can be reasonably estimated at $16,000 annually." Appellant's Reply Brief at 6.

We acknowledge Edward Rose presented evidence that among its advertising efforts, on-premises signage not only generated more leases than any other effort for the period from 2005 to 2007, but also that on-premises signage was the most cost-effective advertising method. The problem with Edward Rose's evidence, however, is that because its marketing reports do not state how many leases are attributable to each of the four on-premises signs (it groups the signs into a collective "signs and banners" category), the $16,000 annual budget increase represents a reasonable estimate of the amount Edward would have to spend to recover leases generated by all four on-premises signs. That means removal of the Sign will require Edward Rose to increase its annual budget in an amount less than $ 16,000 to recover the leases that would have been generated by the Sign and, significantly, a reasonable estimate of that figure is anybody's guess. During the certiorari proceeding, Edward Rose invited the trial court to infer that a significant portion of the $16,000 was attributable to the Sign because it was visible to drivers on busily-traveled I–65, whereas the other three were visible to drivers on lesser-traveled McFarland Boulevard. Certainly the trial court could have made such an inference, but it was not required to do so. Thus, we are left with evidence that removal of the Sign will result in Edward Rose having to increase its annual advertisement budget in an amount less than $ 16,000 to recover leases that would have been generated by the Sign. Given that the evidence cannot establish a more precise estimate of this amount, we cannot say Edward Rose has established it will suffer significant economic injury as a matter of law.

### 2. Self–Created Injury

■ Edward Rose argues its injury is not self-created because, although it was aware the Sign was in violation of the

zoning ordinance since the early 1990s, the mere purchase of property with knowledge of the applicable zoning ordinance does not constitute a self-created injury. The *McDonald's* court did not specify what constitutes a self-created injury for purposes of determining practical difficulties, but did state that the practical difficulties standard is similar to the "unnecessary hardship" standard for determining a use variance pursuant to Indiana Code section 36–7–4–918.4. 481 N.E.2d at 146. Cases addressing the unnecessary hardship standard pursuant to that statute have indicated, consistent with Edward Rose's argument, that the mere purchase of property with knowledge of applicable zoning ordinances does not necessarily constitute a self-created injury. *See Reinking,* 671 N.E.2d at 141; *Fail v. LaPorte County Bd. of Zoning Appeals,* 171 Ind.App. 192, 200, 355 N.E.2d 455, 460 (1976). The evidence presented to the trial court, however, arguably goes beyond mere knowledge. Specifically, Edward Rose acknowledged at the BZA proceeding not only was the company aware of the zoning restriction when it purchased the property, it petitioned to have the property rezoned from agricultural to apartment-residential. *See* Appellant's App. at 127–28. Coupling this evidence with the fact that Edward Rose used the Sign as a marketing tool for over fifteen years knowing it was in violation of the ordinance, and despite never attempting to obtain a variance prior to the instant petition, it is difficult to see how a reasonable person could not describe Edward Rose's injury as self-created. Accordingly, we are not convinced Edward Rose can establish that its injury was not self-created as a matter of law.

### 3. Feasible Alternatives

■ Edward Rose argues that because "no contradictory evidence has been presented in this case which shows that Sundance could still achieve the objective of providing information regarding the apartment community to traffic passing by the property on I–65, while still meeting the requirements of Marion County Code's sign ordinance," appellant's br. at 13, it proved there are no feasible alternatives as a matter of law. Edward Rose's characterization of the evidence is not entirely correct. During the BZA proceeding, a Department official offered the availability of nearby billboard advertising as proof that removal of the Sign will not result in practical difficulties. We acknowledge that the official's testimony in this regard was not extensive, but given the standard of review, it is incumbent on Edward Rose to explain, based on the evidence presented, why a billboard does not constitute a feasible alternative as a matter of law. Because Edward Rose offers no such explanation, we cannot say it carried its burden.

To summarize, Edward Rose offered some evidence to permit a reasonable person to find that removal of the Sign will result in practical difficulties in the use of the property. On appeal from the trial court's affirmation of the BZA's denial, however, Edward Rose must show that no reasonable person could conclude otherwise. As the foregoing discussion indicates, the evidence was conflicting on the issue of practical difficulties, which compels a conclusion that the trial court's affirmation of the BZA's decision was not improper.

### Conclusion

The trial court did not improperly affirm the BZA's denial of Edward Rose's petition for a variance.

Affirmed.

BAKER, C.J., and BAILEY, J., concur.