**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**ANDRIELLE M. METZEL**
**JAMES B. CHAPMAN, II**
Benesch Friedlander Coplan & Aronoff, LLP
Indianapolis, Indiana

ATTORNEYS FOR INTERVENORS,
Glendale Partner's, Inc.:

**MICHAEL RABINOWITCH**
**MAUREEN E. WARD**
Wooden & McLaughlin, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ALEXANDER WILL**
**KATIE KAWIECKI**
Office of Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RISING PROPERTY MANAGEMENT, LLP, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1107-MI-662 |
| | ) | |
| DEPARTMENT OF METROPOLITAN DEVELOPMENT BOARD OF ZONING APPEALS, | ) ) ) | |
| | ) | |
| Appellee-Respondent, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| GLENDALE PARTNERS, INC., | ) | |

**January 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Rising Property Management, LLP, ("RPM") appeals the trial court's order affirming the decision of the Metropolitan Board of Zoning Appeals ("BZA") to approve a petition for variance filed by Glendale Partners, Inc., ("Glendale"). We affirm.

## Issue

RPM raises one issue, which we restate as whether the trial court properly affirmed the BZA's approval of Glendale's petition for variance.

## Facts

Glendale owns a 0.46 acre parcel of property located at 5215 North College Avenue in Indianapolis. A 6,000 square foot commercial building and parking areas in the front and back of the building are located on the property and have been there since at least 1972. The property was previously used as an appliance store and a video store and has been vacant for nearly two years. The property is zoned C-3, which permits a restaurant use. Glendale intended to lease the property for use as a 165-seat restaurant,

2

with seating for thirty-two patrons outside and 133 patrons inside. Eventually, Glendale reduced its request for outdoor seating to accommodate sixteen patrons.[1]

On July 13, 2010, Glendale filed a petition for variance seeking to provide twenty-one instead of the required fifty-six parking spaces, seeking to add an outdoor dining area, and seeking to modify the setbacks. The setback variances were reaffirmations of a variance granted to Glendale in 1996 for the continued operation of the video store. Based on comments by the Department of Metropolitan Development Planning Staff ("Staff"), Glendale modified its plan, and the Staff recommended approval of the petition subject to several conditions.

On October 19, 2010, the BZA conducted a hearing attended by Glendale and various remonstrators, including RPM, who owns properties immediately south of and across the street from Glendale's property. RPM's property to the south houses a retail store on the first floor and residential apartments on the second floor. That property has five or six diagonal parking spaces, which are accessed by the existing parking lot on Glendale's property. The proposed changes to Glendale's property eliminate or reduce access to those parking spaces. RPM's property across the street houses the Aristocrat Pub.

At the conclusion of the hearing, the BZA granted Gendale's petition to subject to the conditions recommended by the Staff. The BZA issued the following findings of fact:

---

[1] Although the number of outdoor seats was reduced, the parties continue to refer to it as a 165-seat restaurant.

1.  The grant will not be injurious to the public health, safety, morals, and general welfare of the community because the real estate is improved by an existing commercial structure that has existed in the neighborhood for many years and has been occupied from time to time for a [sic] various commercial uses.  The restaurant and related outdoor dining proposed are consistent with other similar restaurants and various other commercial uses in the immediate vicinity.  There is a concrete retaining wall and privacy fence to the north and a landscape buffer to the east, providing a transition to neighboring uses.  The immediate general area, particularly along College Avenue, is pedestrian-orientated, and on-street parking is typical.  Under the circumstances, deviation from ordinance development standards is warranted and will not be injurious.

2.  The use or value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner because the use of the subject property will be consistent in intensity and character with other commercial uses in the immediate area and will enhance the pedestrian friendly, urban commercial appeal of the neighborhood.  Outdoor dining permitted by the grant of this variance will not interfere with adjacent properties, especially given that the peak hours of operation on the subject property will differ from peak operating hours of the commercial use existing to the south on adjacent property.  On-street parking is provided in the immediate area and the proposed use is a pedestrian friendly-use, consistent with neighboring urban commercial uses.

3.  The strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property because of the location of the existing building in a highly developed area of urban commercial uses and the size of the parcel upon which it is located, parking and outdoor dining to ordinance requirements cannot reasonably be provided on site.  Also, permitting outdoor dining as proposed makes the property more economically viable and does not represent a substantial deviation from ordinance requirements.

App. p. 382 (formatting altered). The granting of the petition for variance was subject to the following conditions:

> 1. A landscape plan, indicating landscaping within the rear yard and south side yard, shall be submitted for and subject to Administrator's Approval prior to the issuance of an Improvement Location Permit. Landscaping shall be completed in accordance with said approved plan within six months of the grant of this variance and maintained at all times thereafter.
>
> 2. The existing six-foot fence along the northern property line shall be extended toward College Avenue to fully screen the outdoor seating. If the fence belonging to the adjacent development is ever removed, the petitioner shall erect a six-foot tall solid fence along the northern property boundary.
>
> 3. A parking agreement or agreements, indicating the permitted use of a minimum of thirty off-street parking spaces, shall be submitted prior to occupancy of the structure.
>
> 4. There shall be no valet parking.
>
> 5. Low-level light and signage, indicating the narrow width of the drive aisle, shall be provided along the north side of the building.
>
> 6. A rear customer entrance shall be provided for patrons utilizing the parking area east of the building.
>
> 7. An amended site plan, indicating compliance with the above conditions, shall be submitted for and subject to Administrator's Approval prior to the issuance of an Improvement Location Permit.

Id. at 383.

On November 18, 2010, RPM filed a petition for writ of certiorari and judicial review. Following a hearing, the trial court affirmed the BZA's approval of Glendale's petition for variance. RPM now appeals.

**Analysis**

RPM argues that the trial court erroneously affirmed the BZA's approval of the petition for variance because the evidentiary record does not support such a conclusion. Pursuant to Indiana Code Section 4-21.5-5-14, a court may provide relief from agency action only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n, 758 N.E.2d 34, 36 (Ind. 2001). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support the decision of the board of zoning appeals. St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh County, 873 N.E.2d 598, 601 (Ind. 2007). We have previously held that, to reverse an order of a board granting a variance, an appellant must show that the quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding and decision of the board does not rest upon a rational basis. Boffo v. Boone County Bd. of Zoning Appeals, 421 N.E.2d 1119, 1125-26 (Ind. Ct. App. 1981).

We presume the determination of the board is correct and afford great weight to its decision by virtue of its experience in this given area. Burcham v. Metro. Bd. of Zoning Appeals of Marion County, 883 N.E.2d 204, 216 (Ind. Ct. App. 2008). "We resolve all doubts about facts in favor of the BZA's decision, without reweighing the evidence or

6

reassessing the credibility of the witnesses." Id. "If the evidence is sufficient to uphold the BZA's decision, we must do so." Id.

"A trial court and an appellate court both review the decision of a zoning board with the same standard of review." St. Charles Tower, 873 N.E.2d at 600. To the extent a trial court's factual findings were based on a paper record, we conduct our own de novo review of the record. Equicor, 758 N.E.2d at 37.

Because the property was zoned in a manner that permitted a restaurant, Glendale was not seeking a variance of use; instead, it was seeking variances from developmental standards. As such, Indiana Code Section 36-7-4-918.5 applies. That statute provides in part:

> A variance may be approved under this section only upon a determination in writing that:
>
> > (1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;
> >
> > (2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner; and
> >
> > (3) the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property. . . .

Ind. Code § 36-7-4-918.5(a). Of the variances sought by Glendale, only the reduced parking and outside seating requests are at issue on appeal.

### I. Health, Safety, Morals, and General Welfare of the Community

7

RPM argues, "the record is devoid of any evidence to show that the approval of Glendale Partner's Variance Petition would not be injurious to the public's safety." Appellant's Br. p. 19. As evidence that the approval of the parking and outdoor seating variances will not be injurious to the public health, safety, morals, and general welfare of the community, Glendale and the BZA point out that numerous other restaurants in the area have requested and received variances reducing the amount of required parking spaces, that there is a pattern of variances to permit outdoor activity in the area, that Glendale had an agreement to provide thirty additional off-site parking spaces, that on-street parking is common in the area, that Staff did not require a traffic impact study because they did not believe it would be warranted, that crime rates had fallen in 2010 after two restaurants in the area received variances, and that Staff addressed safety concerns by requiring landscaping, lighting, fencing and access to the restaurant from the rear parking lot.

There is evidence that Glendale's plan "provides more parking than any other restaurant with similar seating capacity along College Avenue." App. pp. 395-96. There is also evidence of a reduced need for parking because of the walkability of the area. Specifically, the Staff report shows that "the general area is pedestrian-orientated and this use would likely draw customers from the immediate neighborhood. Therefore, providing for a restaurant with deficient parking would be supportable." Id. at 152.

Taken as a whole, this is substantial evidence to support the BZA's finding. To the extent RPM directs us to evidence from the remonstrators of the exacerbation of

8

parking problems and the noise from outdoor operations,[2] RPM is asking us to reweigh the evidence. We cannot and will not do so.

## II. Use and Value of Adjacent Area

RPM argues there is no evidence to support the BZA's finding that the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner. RPM first contends that neither the BZA nor the trial court considered the residential uses to the south overlooking the proposed outdoor seating. Those residential apartments, however, are located in a commercially zoned area above a retail shop and the BZA ultimately approved outdoor seating for only sixteen patrons. Even if we were to agree with RPM that the residents of the apartments will feel the negative impact of the approved variances, it was for the BZA to weigh the evidence and determine whether the use and value of the area adjacent to the property would be affected in a "<u>substantially</u> adverse manner." I.C. § 36-7-4-918.5(a)(2) (emphasis added). Clearly the BZA was not persuaded by RPM's evidence on this point when it found, "the use of the subject property will be consistent in intensity and character with other commercial uses in the immediate area and will enhance the pedestrian friendly, urban commercial appeal of the neighborhood." App. p. 382.

RPM also argues that, because restaurant patrons will utilize more on-street parking, existing business will sacrifice the loss of their own patrons because it will

---

[2] Although RPM also references the safety concerns related to increased traffic flow, delivery vehicle traffic, limited accessibility, and hindered maneuverability, the property was already commercially zoned and permitted Glendale to use of the property as a restaurant.

9

become increasingly more difficult for customers to frequent their establishments and for them to accept deliveries. In support of this argument, RPM directs us to the objections of two nearby business owners.

Contrary to this evidence, however, others offered support for the variances and were not concerned about parking. For example, one person speaking on behalf of an economic development and quality of life initiative testified at the BZA hearing that a restaurant would not detract from any existing businesses because "exactly the opposite tends to occur." Id. at 397. She explained:

> We believe that more intensity at the business corner will help all businesses. A restaurant patron chooses to shop for a few minutes at a nearby restaurant [sic], or perhaps go to the restaurant across the street if the other one is crowded, rather than proceeding to a different area. So we are in strong support of our existing businesses, but we also believe by precedent that this will help them.

Id. at 397-98. Another nearby commercial property owner wrote:

> We believe that granting the requested variances to permit operation of the planned restaurant at that location will have a very positive economic impact in this area, and the request for a parking variance will not negatively impact either our investment or the community in general.
>     In fact, updated and increased commercial activity along College Ave. in this traditionally commercial area will be of benefit to other neighboring commercial and residential property owners. Parking variances, like the variance being requested here are a necessary and integral aspect of a semi-urban area such as the Meridian Kessler neighborhood. Indeed, virtually none of the businesses along College Ave. could exist without some deviation from the ordinance.

Id. at 185.

There is also evidence that the restaurant would invigorate the lot, which has been an eyesore. As the Meridian-Kessler Neighborhood Association explained, "A vacant building in decline for well over a year has been renovated and will be landscaped, thus removing an eyesore from this flourishing area." Id. at 137. This evidence taken with the evidence of walkability and the off-site parking agreement supports the BZA's conclusion that use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner.

Finally, RPM claims that the approval of the outdoor seating configuration makes it impossible for RPM's residents and tenants to utilize another five to six parking spaces located on RPM's property, further contributing to the parking problem. This argument, however, is apparently based on the premise that RPM is entitled to access those parking spaces via Glendale's property. Without a showing of RPM's legal right to access those parking spaces via Glendale's property, we are not convinced that the adjacent property will be affected in a substantially adverse manner.[3]

### III. Practical Difficulties

---

[3] Although RPM uses the term "taking" in its opening brief, it provides no legal analysis to support a takings claim. Appellant's Br. p. 22. Accordingly, this issue is waived. See In re Guardianship of Hickman, 811 N.E.2d 843, 848 n.5 (Ind. Ct. App. 2004) (concluding that party's failure to develop an argument or support it with citations to authority waived the issue), trans. denied; Ind. Appellate Rule 46(A)(8)(a) (requiring the contentions of the appellant to be supported by cogent reasoning and citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on). To the extent RMP argues that the approval of the variance was a regulatory taking in its reply brief, the claim is waived because an argument may not be made for the first time in a reply brief. See Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 977 (Ind. 2005) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived."). Similarly, RPM's argument that the elimination of access to its parking spaces is a public safety issue is waived because it is made for the first time in its reply brief. See id.

RPM also argues that there is no evidence to support the BZA's finding that the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property. We have articulated several factors to consider in determining whether compliance with a zoning ordinance will result in practical difficulties: 1) whether "significant economic injury" will result if the ordinance is enforced; 2) whether the injury is self-created; and 3) whether there are feasible alternatives. Edward Rose of Indiana, LLC v. Metro. Bd. of Zoning Appeals of Marion County, 907 N.E.2d 598, 605 (Ind. Ct. App. 2009) (citing Metro. Bd. of Zoning Appeals of Marion County v. McDonald's Corp., 481 N.E.2d 141, 146 (Ind. Ct. App. 1985)), trans. denied. Although these factors are not exclusive, the parties frame this issue in relation to these factors, and we address them accordingly. See id.

### A. Significant Economic Injury

RPM contends there is no evidence to support a conclusion that significant economic injury would result from applying the zoning ordinance. RPM claims that Glendale only presented evidence showing it cannot accomplish the development it wants without the variances and asserts that difficulty in compliance with the zoning ordinance is not the same as practical difficulties that would support the variances. Glendale, however, presented evidence showing it will suffer significant economic injury in the absence of the variances because the property has been vacant for almost two years, following the video store's bankruptcy. As Glendale asserts, the empty building "would continue to be an economic drain on Glendale Partners through the loss of rental income .

12

. . ." Glendale's Br. p. 19. This evidence shows that the enforcement of the zoning ordinance will result in significant economic injury.

### B. Injury Is Not Self-Created

RPM argues Glendale's injury is self-created because of its desire to use the site as a 165-seat restaurant with outdoor operations. According to RPM, "Glendale Partners clearly knew of the zoning issues associated with putting a high-traffic restaurant with outdoor operations at this particular location; that is why Glendale Partners filed for a variance petition, and that is why any injury Glendale Partners has sustained is a self-created one." Appellant's Br. p. 13. Quite simply, Glendale's knowledge of the zoning ordinance and petitioning for variances did not render the injury self-created.

Moreover, there is no evidence that Glendale purchased the property with the intention of developing it in a manner that would require the variances. Even if that had been the case, "the mere purchase of property with knowledge of applicable zoning ordinances does not necessarily constitute a self-created injury." Edward Rose, 907 N.E.2d at 606.

The evidence shows that the building was originally built as an appliance store and then housed a video store and that the existing parking configuration had been in effect since 1972. There is evidence that the "neighborhood was planned with these commercial nodes that are close to residential areas" and that the neighborhood was "planned with plenty of street parking to accommodate businesses and residents." App. p. 396. The evidence also shows that other nearby restaurants, including the Aristocrat, had received similar variances and that they "would not be operating today if they did not

13

obtain similar variances from the present-day requirements for parking in our urban setting – platted long before today's heavy reliance on automobiles and parking." Id. at 137. At the BZA hearing, a Staff member explained, "we do think that the issues on this particular site aren't much different than issues on surrounding sites." Id. at 423. This evidence shows that the injury was not self-created.

### III. Feasible Alternatives

RPM argues that there is no evidence showing that there are no feasible alternatives because the property may be utilized for a host of commercial uses other than a restaurant, including a school, beauty shop, and retail-type uses. RPM directs us to evidence that the property was previously used as an appliance store and video store and that inquiries have come from others prospective tenants, who would not require variances. Contrary to RPM's assertion, Glendale was not required to show "that alternative tenants have approached but withdrawn requests because they cannot comply with the Zoning Ordinance." Appellant's Br. p. 10. Instead, this factor relates to the availability of feasible alternatives, and the lack of feasible alternatives is evidenced by the two-year vacancy.

RPM claims that the two-year vacancy cannot constitute evidence a lack of feasible alternatives because property owners could strategically wait to allow their properties to remain vacant to obtain a variance rather than comply with the applicable zoning regulations. RPM suggests that a building could remain vacant for reasons unrelated to zoning issues, including charging exorbitant rent or being overly cautious regarding prospective tenants. Although a two-year vacancy does not compel the

14

conclusion that no feasible alternatives exist, it is evidence to support such a conclusion, and we decline to speculate as to why the building has remained vacant.

Taking these factors together, there is sufficient evidence to support the BZA's conclusion that the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property. To conclude otherwise would require us to reweigh the evidence, which we cannot do.

Glendale presented evidence showing the approval of the developmental standards variances will not be injurious to the public health safety, morals, and general welfare of the community, the use and value of the area adjacent to the property will not be affected in a substantially adverse manner, and the strict application of the zoning ordinance will result in practical difficulties. This evidence supports the BZA's decision to approve Glendale's petition for variance, and the trial court properly affirmed the BZA's decision.

### Conclusion

RPM has not established that the quantum of legitimate evidence was so proportionately meager as to lead to the conclusion that the BZA's findings did not rest on a rational basis. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.