

IN THE

# Court of Appeals of Indiana

Tipton County Board of Zoning Appeals

*Appellant-Respondent*

v.

Hope for the Hurting

*Appellee-Petitioner*



FILED

Feb 21 2024, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 21, 2024

Court of Appeals Case No.
23A-MI-1733

Appeal from the Grant Circuit Court

The Honorable Mark E. Spitzer, Judge

Trial Court Cause No.
27C01-2210-MI-219

**Opinion by Judge Riley**
Judges Brown and Foley concur

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, Tipton County Board of Zoning Appeals (BZA), appeals the trial court's findings of fact and conclusions thereon, reversing the BZA's decision and concluding that the BZA's findings were arbitrary, capricious, and not supported by substantial evidence when it denied Appellee-Petitioner's, Hope for the Hurting (Hope), application for a special use exception under the Tipton County Zoning Ordinance.

We affirm.

## ISSUE

The BZA presents this court with one issue on appeal, which we restate as: Whether the trial court properly determined that the BZA's decision in denying Hope's request for a special use exception was arbitrary, capricious, and not supported by substantial evidence.

## FACTS AND PROCEDURAL HISTORY

This case comes before us as a judicial review proceeding, challenging the BZA's denial of Hope's request for a special use exception under the Tipton County Zoning Ordinance (Ordinance) to operate a drug treatment center in rural Tipton County, approximately six to seven miles outside the City of Tipton. Hope is a faith-based charity that operates various types of treatment facilities in the country for those suffering from addiction. Warren and

Michelle Stine, longtime residents of Tipton County, donated their property (Property) to Hope because of their support for treatment facilities to combat "the devastation, destruction and grief" caused by drug addiction. (Appellant's App. Vol. III, p. 87). The donated Property includes two large homes, sufficient for Hope to treat twenty-five to thirty residents, and is surrounded by trees and fields, all of which are zoned agricultural. There are no other homes within a half mile of the Property.

[5] Hope intends to use the Property as the "Oasis," which will be a ninety-day voluntary addiction treatment residence. (Appellant's App. Vol II, p. 41). Residents will be attending the treatment plan of their own free will and not as part of a court deferment or a release from jail. Their participation will not be compelled by the court, law enforcement, or their employer. The residence will be staffed around the clock by medical personnel, which will include doctors and nurses. Eventually, the Oasis will have twenty-five to thirty employees, resulting in a 1-to-1 ratio between staff and residents. No drug use will be allowed on the premises and residents will have no access to drugs while at the facility. To ensure compliance with the drug-free environment, residents will be drug-tested during their stay. Hope will perform background checks on each resident prior to enrollment in the facility to determine whether they have a history of violent or criminal behavior. Residents will be monitored throughout the day to ensure compliance with Oasis's rules, and any occasional visitation will be supervised. Residents will be chaperoned while outdoors on the grounds around the residence for worship, relaxation, meditation, or exercise.

The Oasis's security system will be comparable to similar facilities throughout Indiana and will consist of security cameras that constantly monitor inside and around the Property. Doors will be alarmed, and staff will be trained in how to handle security measures. Residents will not be allowed to keep their vehicles at the Oasis and will remain onsite twenty-four hours a day. They may choose to leave the Oasis prior to completion of the program but must go through a checkout process before being allowed off the premises. Oasis staff will return the resident to their family and will not release them from the Property itself.

[6] Hope already operates several similar facilities in Howard County for those overcoming substance abuse, including homes in rural areas comparable to the facility proposed by Hope for Tipton County. Neighbors of these Howard County facilities are supportive of the facilities and confirmed that they have not been negatively impacted by them nor have they experienced safety issues related to the residents. The Howard County sheriff concurred that there have been no problems with the facilities within his jurisdiction and a probation officer referred to the facilities maintained by Hope as "top notch." (Appellant's App. Vol. II, p. 116). Several employers in Tipton County expressed their support for Hope's "high end clinical inpatient program." (Appellant's App. Vol. II, p. 58).

[7] Because the Property is zoned as agricultural, Hope applied for a special use exception as a "Social Rehabilitation Center" under the Ordinance. (Appellant's App. Vol. II, p. 20). The Ordinance requires the BZA to grant this

special use exception when a number of criteria (Subsections) are met, which include:

A. the zoning ordinance authorizes the special exception request, and the request conforms to all general regulations of this Ordinance;

B. the proposed use shall not involve any element or cause any condition that may be dangerous, injurious, or noxious to any other property or persons, and shall comply with the performance standards herein;

C. the proposed use shall be sited, oriented, and landscaped so that the relationship of its buildings and grounds to adjacent buildings and properties does not impair health, safety, or comfort, and does not adversely affect values of adjacent properties;

D. the proposed use shall produce a total environment effect which is consistent with, and not harmful to, the environment of the neighborhood;

E. the proposed use shall organize vehicular access and parking to minimize conflicting traffic movement on adjacent streets;

F. in the case of a change in nonconforming use, the proposed use shall be equally appropriate or more appropriate to the district than the existing or former non-conforming use; and

G. the proposed use shall promote the objectives of this Ordinance and shall be consistent with the Comprehensive Plan.

(Ordinance § 805. 01; Appellant's App. Vol. IV, p. 42). Hope initially sought this special use exception in 2020. At that time, the BZA indicated that the Oasis needed to obtain a license from the State before it would consider the application. While the State does not license treatment facilities prior to zoning approval, Hope worked with Governor Holcomb to obtain certification that showed the State preliminarily approved the Oasis. Hope re-applied for the special use exception on February 28, 2022. The BZA then set the application for hearing on June 1, 2022.

[8] During the hearing, after Hope had presented its evidence in support of the requirements for the special use exception, a number of remonstrators to the Oasis spoke and presented letters against granting the special use exception. Several remonstrators used derogatory language, labeling those trying to get help as being "not disciplined and [] irresponsible," with one commentator opining that it "makes me sick to my stomach" to think that there might be recovering addicts a half mile from his home. (Appellant's App. Vol. II, pp. 140, 148). The remonstrators offered hypotheticals of the perceived dangers if the Oasis was allowed to commence treatment, including, that residents would cause "[t]oxic spills into fields and waterways," use farm fields as "a meeting place for drugs as they hide out or as an escape route out of the neighborhood," become "menacing or angry runaway clients from detoxing and withdrawal," attack children who are playing outside, start a "fire in the fields from secretly smoking cigarettes and/or negligent acts," be violent criminals, sex offenders, and child molesters, leave the facility and come to nearby homes "looking for

transportation, money, weapons, or take someone hostage if that's their goal," and force a local landowner to keep "a handgun strapped to [his] hip when [he's] out there on the lawn mower." (Appellant's App. Vol. III, pp. 141, 149, 158, 169, 172). At the close of the hearing, after receiving testimony from Hope, the remonstrators, and others, the BZA denied the special use exception.

[9] On August 3, 2022, the BZA issued its written findings. Upon review of the presented evidence, the BZA concluded that the special use exception should be denied because Hope had failed to satisfy Subsection B and G of paragraph 805.01 of the Ordinance. With respect to Subsection B, the BZA concluded:

> Petitioner presented information as to the type of treatment services which would be provided, the expected day-to-day operations to be conducted, [and] a generalized description of the type of individual clients who would be treated at the facility. Petitioner attempted to assuage the safety concerns which had been expressed by neighbors and remonstrators, by describing the minimal nature of security measures that Petitioner believed to be appropriate at this type of treatment facility, along with Petitioner's beliefs as to why only minimal security and safety measures were needed. Still, despite Petitioner's representations and attempted reassurances, several remonstrators expressly controverted the Petitioner['s] claim, and asserted their beliefs that the proposed safety and security measures were inadequate. The statements and testimony of some remonstrators were more relevant and more credible than others. The BZA gives appropriate weight and due consideration to the testimony and statements which appear to be based on reason or supported by credible argument. Any testimony or statements which appeared utterly devoid of relevant facts, or which seemed to go against all common sense, was discounted and not relied upon.

Keith Willis, a close neighbor to the property, asserted his belief that the proposed use, at that location, would create a potential danger to his family and those living in his residence.

Other remonstrators, including Ed Ripberger, asserted that the operations of the use, as described by Petitioner, would still cause or create a condition that may be dangerous, or it posed an unacceptable level of risk of potential injury to nearby properties and neighbors in the area. Remonstrators gave examples as to how they believe such dangerous or injurious conditions could occur as a result of the proposed special exception.

Dave Colbert, another neighbor, asserted his belief that the operational plans as described by Petitioner actually serves to show that adequate security and safety measures are not going to be provided.

(Appellant's App. Vol. IV, p. 44). With respect to Subsection G, the BZA concluded:

Several remonstrators testified, asserting their understanding and beliefs as to how the proposed special exception use, at that particular location, was not consistent with the goals expressed in the Comprehensive Plan.

* * * *

Petitioner has failed to provide substantial, persuasive evidence which demonstrates that the proposed special exception use, at this particular rural residential site, would promote the objectives of the Tipton County Zoning Ordinance. Petitioner has failed to adequately demonstrate, by substantial evidence, that the proposed special exception use, at this particular site, would be consistent with the Comprehensive Plan.

(Appellant's App. Vol. IV, pp. 44-45).

[10]    On June 30, 2022, Hope filed a verified petition for judicial review of BZA's denial of the special use exception. On February 24, 2023, after the parties filed their respective briefs, the trial court conducted a hearing. On June 30, 2023, the trial court issued its findings of fact and conclusions thereon, reversing the BZA. In its Order, the trial court found that:

> Notably, the opponents' presentations did not consist of factual observations regarding the project or the Property (other than its proximity to their real estate) but was made up largely of opinions of people in recovery and speculative "parade of horribles" of imagined scenarios where the patients of the facility would engage in criminal or reckless behavior. These opponents used disparaging and derogatory language, labeling those in recovery as being "not disciplined and are irresponsible." One commentator said it "makes me sick to my stomach" to think that there might be recovering addicts half mile from his home. However, the opponents offered no substantive evidence that they would be at risk from those voluntarily seeking help under the watchful eye of Hope and under the rules set for the Oasis. Instead, they provided hypotheticals that have no basis in fact or the record but are grounded in distrust of those in recovery from substance dependency.

(Appellant's App. Vol. II, p. 10). Turning to Section B of the Ordinance, the trial court concluded

> The BZA's findings as to Subsection B rest not on facts but on the opponents' unreasonable and irrational animus towards those trying to recover from addiction. The BZA found that the Oasis did not satisfy Subsection B because it accepted the opponents' comments as fact and rested its decision on hypotheticals that

have no connection to how the evidence indicated that the Oasis would actually be operated. As such, those findings amounted to "speculation and conjecture."

(Appellant's App. Vol. II, p. 13). In its evaluation as to whether the objectives of the Ordinance and the Comprehensive Plan were satisfied as called for in Subsection G, the trial court determined that "[t]he BZA's findings were irrational and unsupported by substantial evidence as to both the [] [O]rdinance and the [C]omprehensive [P]lan." (Appellant's App. Vol. II, p. 19).

[11] The BZA now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

I. *Standard of Review*

[12] When reviewing a decision of a zoning board, this court and the trial court are bound by the same standard. *Midwest Minerals Inc. v. Bd of Zoning Appeals of Area Plan Dep't/Comm'n of Vigo Cnty*, 880 N.E.2d 1264, 1268 (Ind. Ct. App. 2008), *trans. denied*. We presume the determination of the BZA, an administrative agency with expertise in zoning matters, is correct. *Id*. Therefore, we will reverse only if the BZA's decision is arbitrary, capricious, or an abuse of discretion. *Id*. We will not reweigh the evidence or substitute our decision for that of the BZA. *Id*.

[13] Here, in its application to the BZA, Hope formulated its request as a special use exception to the Ordinance.

It is often true, [], that if a petitioner for a special exception presents sufficient evidence of compliance with relevant statutory requirements, the exception must be granted. However, . . . while some special exception ordinances are regulatory in nature and require an applicant to show compliance with certain regulatory requirements (e.g. structural specifications), providing the zoning board with no discretion, some special exception ordinances provide a zoning board with a discernable amount of discretion (e.g. those which require an applicant to show that its proposed use will not injure the public health, welfare, or morals). The position that a board of zoning appeals must grant a special exception upon the applicant's submission of substantial evidence of compliance with the relevant criteria is true only as to ordinances falling within the former category. In other words, when the zoning ordinance provides the board of zoning appeals with a discernable amount of discretion, the board is entitled, and may even be required by the ordinance, to exercise its discretion. When this is the case, the board is entitled to determine whether an applicant has demonstrated that its proposed use will comply with the relevant statutory requirements.

*Crooked Creek Conservation & Gun Club v. Hamilton Cnty. N. Bd. of Zoning Appeals*, 677 N.E.2d 544, 547-48 (Ind. Ct. App. 1997) (citations omitted), *trans. denied*.

[14] Hope proceeded pursuant to the Social Rehabilitation Center exception under the Ordinance, which is a special use exception in all Tipton County zoning districts and which is defined as:

A secure or non-secure facility licensed by a department of state or local government in which persons reside while receiving, either within the facility or elsewhere, services which are designed to equip them for independent living within the community. Such services may include therapy, treatment, training, and/or counseling which is directed at one or more of

the following groups: assisting persons to recover from the [e]ffects of drugs or alcohol or the dependence thereon; assisting persons with family, school, or social adjustment problems to return to normal family or communal life; or assisting persons to be housed under supervision while under the constraints of alternatives to imprisonment, including, but not limited to work-release, pre-release, and probationary programs. For the purpose of this Ordinance, this definition does not include state or federally owned and operated facilities.

(Ordinance § 201; Appellant's App. Vol. II, p. 20). However, in order to be granted this special use exception, the applicant also must establish satisfaction with the seven Subsections enumerated in paragraph 805.01 of the Ordinance, two of which are the focus of this appeal and which state:

B. the proposed use shall not involve any element or cause any condition that may be dangerous, injurious, or noxious to any other property or persons, and shall comply with the performance standards herein;

G. the proposed use shall promote the objectives of this Ordinance and shall be consistent with the Comprehensive Plan.

It is clear that these Subsections, having no absolute objective standards against which they can be measured, involve discretionary decision making on the part of the BZA. *See Crooked Creek*, 677 N.E.2d at 548. Thus, the BZA was entitled to determine whether Hope satisfied the requirements for the grant of a special use exception. *Id.*

Because the burden of demonstrating satisfaction of the relevant statutory criteria rests with the applicant for a special exception, this court has been

cautious to avoid imposing upon remonstrators an obligation to come forward with evidence contradicting that submitted by an applicant. *Id*. Thus, Hope bore the burden to show that the Oasis would comply with the above-mentioned Subsections. *See id*. Neither those opposed to Hope's application nor the BZA were required to negate Hope's case. *Id*.

[16] As remonstrators need not affirmatively disprove an applicant's case, the BZA may deny an application for a special use exception on the grounds that an applicant has failed to carry his burden of proving compliance with the relevant statutory criteria, regardless of whether the remonstrators present evidence to negate the existence of the enumerated factors. *Id*. However, because the BZA determined that Hope was not entitled to a special use exception and appears to have based its determination upon testimony presented by the remonstrators, we will determine whether the BZA's decision was based upon substantial evidence. *See id.*

[17] When analyzing whether an administrative decision is supported by substantial evidence, the reviewing court must determine from the entire record whether the agency's decision lacks a reasonably sound evidentiary basis. *Id*. Thus, we have noted that evidence will be considered substantial if it is more than a scintilla and less than a preponderance. *Id*. at 549. In other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. At a minimum, substantial evidence "must be more than speculation and conjecture." *Terra Nova Dairy, LLC v. Wabash Cnty. Bd. of Zoning Appeals*, 890 N.E.2d 98, 104 (Ind. Ct. App. 2008).

II. *Analysis*

While not disputing that Hope can be characterized as a Social Rehabilitation Center and may apply for the special use exception, the BZA contends that Hope did not satisfy the mandated Subsections found in paragraph 805.01 of the Ordinance prior to being granted the special use exception. Specifically, the BZA points to Subsections B and G as being unmet by Hope's application.

A. *Subsection B*

Pursuant to Subsection B, a special use exception can be denied if it will involve a condition that "may be dangerous, injurious, or noxious to any other property or persons." (Ordinance § 805.01; Appellant's App. Vol. III, p. 31). In support of its decision that this Subsection was not met, the BZA focused on Hope's proposed security measures and the remonstrators' "beliefs that the proposed safety and security measures were inadequate." (Appellant's App. Vol. IV, p. 44).

During the hearing before the BZA, Hope detailed the security measures that would surround the Oasis and which would be consistent with similar facilities in Indiana. Representatives of Hope testified that cameras on the property would continuously monitor the residents, doors would be alarmed, and residents would not be allowed on the grounds unchaperoned. Background checks will be run on the residents prior to their tenancy at the facility and no drug use will be allowed while participating in the program. Numerous witnesses who lived nearby Hope's similar facility in Howard County testified

that there have been no incidents and that they have not experienced any safety concerns.

[21] Ignoring this testimony and evidence, the BZA instead singled out the testimonies of certain remonstrators who voiced their "beliefs" that the facility would create a potential danger. (Appellant's App. Vol. IV, p. 44). Without any substantiation of the remonstrators' beliefs, their testimonies merely reflected the bias harbored by the remonstrators and the convictions that those in recovery are inherently dangerous while they participate in voluntary treatment. Their speculation has no grounding in fact. *See Terra Nova Dairy, LLC,* 890 N.E.2d at 104 (evidence must be more than speculation and conjecture).

[22] Before the trial court and on appeal, the BZA contended that a danger to neighbors could exist based on the fact that the Hope facility in Los Angeles experienced three resident overdoses in the span of a decade. However, as pointed out by Hope, this does not constitute a danger to neighbors, and the BZA cites no evidence indicating that the Los Angeles facility endangered its surrounding neighbors. Instead, the evidence reflects that, unlike the Oasis, the Los Angeles facility is a sober living house where residents are allowed to come and go. Residents at the Oasis are "not going to be able to leave. They're not going to be able to call somebody to say, come bring me drugs. They're going to be tested routinely. But a sober living is not that." (Appellant's App. Vol. II, p. 82).

[23] In another effort to substantiate its denial under Subsection B, the BZA attempts to shoehorn remonstrator Willis's concern "that the proposed use, at that location, would create a potential danger to his family and those living in his residence," into an allegation of traffic safety by linking this statement to Willis's other statement in which he noted "my oldest is five years old and I think having this facility is an extreme danger to them, one because of the traffic that is going to be increased on that road. Right now, I see more tractors than I see cars going down that road, and that is the way I would like to keep it." (Appellant's App. Vol. IV, p. 44; Vol. II, pp 166-67). Seizing on these linked statements, the BZA, before the trial court and now on appeal, asserts that the Oasis's staff will create a traffic danger when the facility's employees arrive or depart. However, the BZA did not include a finding in Subsection B that traffic would create a condition that may be 'dangerous, injurious, or noxious to any other property or persons'; it did not even use the word 'traffic' in its findings, but instead focused on the type of treatment services offered at the Oasis and its security.

[24] Although the Ordinance allows the BZA to consider whether "the proposed use shall organize vehicular access and parking to minimize conflicting traffic movement on adjacent streets" in Subsection E, the BZA expressly declined to make a separate finding about traffic conditions under this Subsection. (Ordinance § 805.01; Appellant's App. Vol. IV, pp. 43-44). Nor is there a finding on traffic elsewhere in the BZA's findings. On judicial review, this court is limited to the findings specifically found by the BZA and we cannot

enter "new findings of fact for the BZA." *Riverside Meadows I, LLC v. City of Jeffersonville, Indiana Bd. of Zoning Appeals*, 72 N.E.3d 534, 540 (Ind. Ct. App. 2017); *Burcham v. Metro. Bd. of Zoning Appeals Div. I of Marion Cnty.*, 883 N.E.2d 204, 215 (Ind. Ct. App. 2008).

[25] The comments voiced by remonstrators during the hearing about their beliefs and concerns against granting Hope the special use exception do not amount to evidence upon which a reasonable mind would rely. *Lockerbie Glove Factory Town Home Owners Assoc', Inc. v. Indianapolis Historic Pres. Comm'n*, 106 N.E.3d 482, 487 (Ind. Ct. App. 2018) (A decision is arbitrary and capricious if it is "patently unreasonable[;] made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion."), *trans. denied*. The BZA's own findings acknowledged that remonstrators' statements veered into unsupported territory when it observed that "[t]he BZA gives appropriate weight and due consideration to the testimony and statements which appear to be based on reason or supported by credible argument. Any testimony or statements which appeared utterly devoid of relevant facts, or which seemed to go against all common sense, was [sic] discounted and not relied upon." (Appellant's App. Vol. IV, p. 44). However, by still crediting these ungrounded statements and explicitly incorporating them in its findings, the BZA elevated fear and bias to the level of evidence. The BZA cannot support its decision with conjecture or speculation, but that is precisely what it did in its findings on Subsection B. Because there was no "basis that would lead a reasonable and honest person to

the same conclusion," the BZA's conclusion with respect to Subsection B should be reversed. *Rice v. Allen Cnty. Plan Comm'n*, 852 N.E.2d 591 (Ind. Ct. App. 2006).

B. *Subsection G*

[26] Subsection G of the Ordinance requires that "the proposed use shall promote the objectives of this Ordinance and shall be consistent with the Comprehensive Plan." (Appellant's App. Vol. III, p. 247). As the Ordinance specifically allows the location of a Social Rehabilitation Center—defined in part as an independent living facility providing treatment and assistance to people recovering from the effects of drugs or alcohol—in an agricultural area, the Oasis promotes the objectives of the Ordinance. Not disputing this conclusion, the BZA instead contends that the better inquiry is whether this particular proposed Social Rehabilitation Center at this particular site promotes the objectives of the Comprehensive Plan.

[27] The Comprehensive Plan provides, in pertinent part, that "[a]lthough the County's agricultural areas are spotted with some residential properties and isolated developments, any new, large-scale development in remote Agricultural areas should be discouraged." (Comprehensive Plan, Sec. 4, p. 4.3). In this light, the BZA points to its discretionary power to conclude that Hope did not meet its burden of demonstrating that the Oasis was compliant with the provisions of the Comprehensive Plan because "a thirty-person facility with equal staff changing shifts three times a day did not 'respect the character

of surrounding areas' and was not of the same 'scale' as the surrounding uses," while "[n]ew development should be concentrated in areas with access to municipal services and infrastructure." (Appellant's Br. pp. 35-36).

[28] Contrary to the BZA's contention, the Oasis is not a new development subject to the language in the Comprehensive Plan. The undisputed evidence establishes that there will be no change in the existing structures that would impact neighboring use of the Property as agricultural and the Oasis will occupy the identical footprint of the original two houses that exist at the site. There will be no change to the exterior of the buildings. The Oasis will have no impact on agriculture and will not create new development, much less development in remote agricultural areas. Although the premises will house up to thirty residents, the homes will remain the same and no new exterior construction will take place to enlarge or modify the original buildings.

[29] The BZA argues that Hope would need a new parking lot that could impinge on the agricultural nature of the surrounding properties. Expanding a parking lot does not create a new structure and does not represent the large-scale development envisioned under the Comprehensive Plan. Moreover, the new parking lot would be created within the boundaries of the existing Property and therefore would not hamper the farming operations of Hope's neighbors.

[30] We agree with the trial court's statement that "[p]erhaps the best evidence that operating a Social Rehabilitation Center is consistent with the Comprehensive Plan is the [O]rdinance itself, which has long allowed such use as a special

exception under the zoning ordinance." (Appellant's App. Vol. II, p. 23). If the Ordinance itself encourages the establishment of new Social Rehabilitation Centers, then such use would certainly include the Oasis which will be located in existing residential houses on Property that has always complied with the Ordinance. Any inconsistency with the Comprehensive Plan is eliminated because the Oasis utilizes the same footprint as the existing residential homes. Hope's proposal here does not contemplate the construction of new buildings to serve as a Social Rehabilitation Center but rather intends to utilize the existing footprint of current residential structures, which is much less disruptive to the existing character of the surrounding agricultural area. Therefore, we conclude that Hope's special use request complies with the requirements of the Comprehensive Plan.

The totality of the evidence before us reflects that the BZA's findings in denying Hope's request for a special use exception are based on a catalogue of speculative and hypothetical dangers the Oasis residents might pose. This hyperbole and conjecture have no basis in fact and do not amount to substantial evidence sufficient to support the BZA's denial. *See Crooked Creek*, 677 N.E.2d at 548; *Terra Nova Dairy, LLC*, 890 N.E.2d at 104 (At a minimum, substantial evidence must be more than speculation and conjecture). Accordingly, we affirm the trial court's Order, reversing the BZA's decision.

# CONCLUSION

Based on the foregoing, we conclude that the trial court properly determined that the BZA's decision, denying Hope's request for a special use exception, was arbitrary, capricious, and not supported by substantial evidence.

Affirmed.

Brown, J. and Foley, J. concur

ATTORNEYS FOR APPELLANT

Bradley M. Dick
Alan S. Townsend
Bose McKinney & Evans, LLP
Indianapolis, Indiana

David Langolf Smith
Tipton, Indiana

ATTORNEY FOR APPELLEE

Mark J. Crandley
Barnes & Thornburg, LLP
Indianapolis, Indiana